## Ziegler *against* Grim.

Testator devised his estate to be equally divided between his daughter C., and the children of his son J., except one tract of land, in which he gave an estate for years to his son J., and the remainder he allowed one of his grandchildren to take at an appraisement. *Held*, that there could be no valuation or partition of this tract, until the period fixed by the testator; but as to the other part of the estate, it should be equally divided.

ERROR to the common pleas of *Berks* county.

Jesse Ziegler and Catharine his wife, against David Grim and David K. Grim, guardians of the children of John Siegfried. Amicable action, upon the following agreement:

"It is hereby agreed between the parties aforesaid, that the above stated amicable action be entered in the court of common pleas of Berks county, as of January term 1837, to determine how much of balance of 14,132 dollars 41 cents, awarded by the auditors upon the account of John H. Siegfried and Jesse Ziegler, executors of the last will and testament of John Siegfried, late of Maxatawny township, deceased, as remaining in the hands of the said executors, which said report was filed on the      day of January 1837, belongs to the plaintiffs by virtue of the last will and testament of the said John Siegfried, the testator. And it is further agreed that the case be tried without declaration or pleadings, and that no exceptions be made to the form of this agreement or to the parties, but that the case be tried upon the merits. Witness the hand of the said parties, this 9th day of January 1837."

The plaintiffs, to maintain the issue on their part, gave in evidence the will of John Siegfried, deceased, dated December 11th, 1834, and proved July 21st, 1835, of which said will the following is a translation and a copy:

"First, I bequeath, order and direct all my worldly property wherewith God has blessed me, in two equal parts: the one part to my daughter Catharine, intermarried with Jesse Ziegler; but for a certain reason, I bequeath my son John Siegfried's entire share to all his children in equal shares; but my son John shall have the right to hold my *old place*, of which he is now in possession, so long as he conducts himself well, and manages his household properly and right, and sustains the character of a sober man; and if not, then shall my hereinafter named executors have the right to rent away the above mentioned place, according to their best judgment. Further, my son John must pay the yearly taxes which shall yearly be assessed upon the above mentioned old place, and further must give an '*ausbehalt*,' which shall be hereinafter mentioned, and do every thing right upon his place. Further, my hereinafter named executors shall have the right to sell of my pro-

perty, and to rent away according to their best judgment, and to give deeds and assurances, which shall be of the same effect as if I myself should give them. Further, it is my will that when my son John's eldest son, namely, John, has arrived at his lawful age of twenty-one years, then shall my hereinafter named executors appoint seven unbiassed men out of the neighbourhood, and shall appraise my already mentioned *old place*, and not on the very highest terms, and my son John's eldest son, namely, John, shall have the right to take said place, at the appraisement, and pay to his brothers and sisters; but he shall also have his part to himself, according to the appraisement; and my executors shall give him a deed, and it shall have the same effect as if I did it myself. Further, I order and bequeath to my wife the free dwelling and house where I now live, and all the household furniture which is in my house, and all clothing, and 1500 dollars in bonds, of which she shall draw the yearly interest. She shall have the choice of all my bonds, and my clock and stoves in my house, and my two cows, and my gray horse, and all my swine, and the stabling and shed room, and the yard and garden, as I have it in possession, and the spring or wash house, to do with it as she will; and the possessor of my old place shall provide her with the best fodder that is raised on the place, and deliver it at her stable; that is, more than sufficient for her cows and horse; and she can have her wood whence she will; and the possessor of my place must deliver it before her door, and cut it fine; and also, the possessor of my old place shall provide her with grain of every kind; namely, wheat, rye, corn, buckwheat, and this clean and good, as much as she needs for her use, take it to the mill and bring it back again, and all the grain for the fodder of her stock. And the possessor of my old place must keep her stock, cows and horse, in pasture with his during the entire summer, and drive them out and in: and when she shall receive visiters, then shall the possessor of my old·place take away the horses, feed them, and bring them again, as may be desired. All this shall she have at the proper time, and so long as she lives and is my widow; and after this, all my property shall come into the two above mentioned parts.

"Further, I order and direct my son-in-law, Jesse Ziegler, and my trusty friend and neighbour, John H. Siegfried, to be my executors. And further, I bequeath unto my wife my chaise and sleigh, and the harness belonging to them, upon the same terms as the above mentioned articles. Further, I order, and it is my will, if it shall so happen that my son John shall die before his wife Hannah, she shall have the right to live with her children so long as she pleases, and the possessor of the old place shall provide her with all necessaries, viz: grain and fire wood, and deliver it at the place where she shall direct. Further, I declare that my already mentioned old place is, that it is the land which I bought of my father, John Siegfried, containing one hundred and forty-eight acres, adjoining lands of John H. Siegfried, Daniel High and others: and I

[Ziegler v. Grim.]

declare again, this consisting of one sheet of paper, as my last will and testament, and have set thereunto my seal. Done at Maxatawny, on the 11th day of December 1834."

And the plaintiffs, further to maintain the issue on their part, gave in evidence the report of auditors upon the account of John H. Siegfried and Jesse Ziegler, executors of the aforesaid will, confirmed on the 13th day of January 1837, showing a balance in the hands of said accountants of 14,132 dollars 41 cents.

It was then agreed that this balance embraced all the property of the deceased John Siegfried, except the "old place" and another tract of land, which last mentioned tract is worth about 2000 dollars.

The plaintiffs, then further to maintain the issue on their part, called as a witness Daniel K. Hottenstein, who being duly sworn, the plaintiff offered to prove by him, the value of the "old place," which was objected to on the part of the defendant. Whereupon the court sustained the objection thus made, and rejected the evidence. To which decision of the court the plaintiffs, by their counsel, excepted.

This gave rise to the only question in the cause. The plaintiffs contended that this land was then to be valued as part of the share of John's children, and that he, in right of his wife, had a right then in this action to recover out of the money in the hands of the executors, an amount equal to the sum at which it may be valued.

The court below (Banks, president) instructed the jury against the plaintiff, who gave a verdict accordingly.

*Strong*, for plaintiff in error.
*Smith*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The controversy between the parties in this case, has arisen out of the last will of John Siegfried the elder; and if the construction given to it by the court below, in their charge to the jury be correct, all the errors assigned must fall to the ground: for it is clear, that it would have been wholly inconsistent with their construction, to have admitted any part of the evidence mentioned in the bills of exception to the opinion of the court in rejecting it, which form the ground of all the errors assigned, except the last, that embraces the exception to the charge of the court on the construction of the will.

Being of opinion, however, that the construction put on the will by the court was right; and that the tendency of the evidence rejected to defeat it with the jury, had it been given to them, is so self evident, as to render it impossible to make it more so by reasoning on it, we shall, therefore, pretermit the exceptions to the opinion of the court in rejecting the evidence, and content ourselves with a brief notice of the charge of the court to the jury.

It meets our entire approbation; because, it seems to be better

suited to give effect to the particular, as well as the main and gene-
ral intent of the testator, so far as it is to be discovered from the
face of the will itself, whence alone it must be collected.　I do not
know that any thing can be added to the charge of the court,
which would show more clearly and distinctly than it does, that
the construction put on the will by the court, is the one which
ought to be given to it, in order to carry into execution the inten-
tion of the testator, which both courts and juries are bound alike
to regard, and to make the rule of their decision, so far as it may
be, consistent with the rules and policy of the law.

Nothing can be more clear than that, by the terms of the will,
the *old place* is given to John, the grandson of the testator, (who
was only seven years of age at the time of trying this cause) when he
shall attain his age of twenty-one, to be taken by him, if he chooses,
at an appraisement then to be made, and not before, by seven
men to be appointed by the executors of the will for that purpose:
and it is equally clear, that this appraisement, if the grandson should
take the old place at it, is to be paid by him, excepting his own
share thereof, which he is to retain, and is to form a part of the
estate or fund, which the testator has directed to be divided into
two equal parts, one whereof is given to the plaintiffs and the other
to the wards of the defendants.　But it is utterly impossible to
determine, what proportion of the estate, thus directed to be
divided, this *old place* will be equal to, until the time shall come
around at which the appraisement of it is to be made, and it shall
have been made accordingly.　This, however, agreeably to the
direction of the will in this respect, which is in terms very explicit,
and free from all ambiguity, cannot be done for more than thir-
teen years yet to come.　Unless, then, the division of every part of
the estate, so directed to be divided into two parts for the exclu-
sive benefit of the plaintiffs, and the wards of the defendants,
be postponed until John, the grandson, shall have arrived at full
age, and shall have taken the *old place* at the appraisement to be
made thereof, which I presume both parties here would object to,
as being not only unreasonable, but contrary to the manifest inten-
tion of the testator, there seems to be no alternative left, but to
divide equally now between them, as much of the estate allotted
to them by the will, as is capable of being valued and divided into
two equal parts, consistently with the tenor of the will.

It may possibly be objected, that this does not seem to comport
altogether with that equality of partition of the testator's estate,
which he has directed to be made of it, between the plaintiffs and
the wards of the defendants; in as much as it excludes the plain-
tiffs from all participation in the benefits to be derived from the
old place during the interim, while the wards of the defendants on
the other hand, may be said, through the privileges granted to their
father, to be obtaining their maintenance, in part, at least from it.
This, however, is merely a consequence of the relation and depen-

[Ziegler v. Grim.]

dence between them and their father, and not the fruit of any gift by the testator directly to them.   Nor can it be said to form, either directly or indirectly, any part of the estate which is directed by the will to be given and divided equally in two parts, between the plaintiffs and the wards of the defendants.   For so far as the testator, in any of the subsequent parts of his will, has disposed of to other persons any portion of his estate, seemingly comprehended within what he in the commencement of it has divided into two parts, to be given to the parties here, it must be considered as an exception, out of what in terms he has previously directed to be divided into two parts, between the plaintiffs and the wards of the defendants.   This must be so, because by the first *item* of the will, the testator has "bequeathed, ordered, and directed *all* his worldly property wherewith God had blessed him, into two parts, the one to be given to his daughter, intermarried with Jesse Ziegler, the plaintiffs, but for a certain reason, he bequeaths his son John Siegfried's entire share, (meaning the other part clearly) to all his children (the wards of the defendants) in equal shares."   Now, although in terms, the whole of the testator's estate is embraced in the first *item*, and disposed of in favour of the plaintiffs and the wards of the defendants, yet in the sequel of his will, the testator gives to his wife a portion of his personal estate, and an interest during her widowhood in the *old place*.   He, likewise, gives to his son John, certain rights and privileges in the *old place* to be enjoyed by him conditionally.   These latter devises and bequests, being introduced into the will, after the provision in favour of the plaintiffs, and the wards of the defendants, will reduce, to the amount thereof, the amount previously given to the plaintiffs, and the wards of the defendants; so that they will only take the *residuum* of the estate.

It may be, too, that some of the incumbrances imposed by the subsequent clauses of the will, upon the *old place*, will not have expired by the time that the grandson shall have attained full age, when it is to be appraised, which would detract from its value, as the appraisement would have to be made subject to them, whatever they might be: or it may be, that they will all have ceased to exist, which would enhance the appraisement of it.   But these are not all the considerations which operate against making an appraisement and division of the *old place* before the grandson shall come of age: for, until then, supposing his interest under the will to be vested, still, being a minor, he is, and will be incapable of determining whether he will take it at the appraisement that shall be made, or of even binding himself to do so.   And again, when he arrives at full age, and the appraisement is made, it may be, that he will decline taking it at the appraisement: and should this happen to be the case, the appraisement will then be no test of its proportional value of the whole estate that is to be divided into the two parts; this part of the estate will have to be ascertained by an

[Ziegler v. Grim.]

actual sale thereof, to be made by the executors under the authority of the will, when the amount of the money arising therefrom, will exhibit its relative value, and what it must be taken at, in making the division between the plaintiffs, and the wards of the defendants, which may happen to be. less, or possibly more than the appraisement. Nothing, indeed, but a sale can determine in this event with any certainty, the true value of the *old place.*

The only ground urged by the plaintiffs for having an appraisement made now, and being paid their half or full portion out of the personal estate on hand, that has any plausibility in it, is the clause in the will, whereby the testator after giving to his grandson the right to take the *old place* at the appraisement, directs, that he " shall pay to his *brothers* and *sisters,* but he shall also have his part to himself, according to the appraisement." Thus directing, as is alleged, the whole appraisement of the *old place,* except his own share of it, to be paid to his *brothers* and *sisters* exclusively, leaving the plaintiffs out of view altogether; and as the plaintiffs by the express provisions of the will, are to have an equal moiety of the whole, they, therefore, as it is contended, have a right to claim, and to be paid their share out of the other part of the estate remaining in the hands of the defendants, which is claimed by the latter for their wards; otherwise, the testator would have directed a due proportion of the appraisement of the *old place,* to be paid by his grandson to his daughter, the plaintiff, as well as to the brothers and sisters of the grandson. But the clause, upon which this argument is based, is, at most, far from being conclusive in favour of the plaintiffs' right to demand at this time, their full share of the estate: because, taken in connection with the subsequen clause of the will, whereby, after having given to his wife, the dwelling-house, stabling, shed-room, yard, garden, spring or wash-house, &c., all situate on, and being part of the *old place,* with other advantages therein specified, to be derived therefrom, the testator declares, " all this shall she have at the proper time, and so long as she lives and is my widow; and *after this, all my property shall come into the two above mentioned parts,*" it may be taken as rather going to show, that the testator did not intend that the division of his estate into two parts, should be made either in part, or in whole, until after the death, or subsequent marriage of his wife. This would seem to be quite as plausible as what the plaintiffs contend for; and if it were to obtain, the plaintiffs, as the wife of the testator is still living and unmarried, would not be entitled to claim any thing until then. But to withhold from them the whole of what is given to them by the will, until the death or marriage of the widow, or the arrival of the grandson at full age, would seem to be unreasonable and contrary to what must have been intended by the testator; for seeing he has made no disposition, and given no direction during this interim for the care and improvement, or use that is to be made of any part of

the estate, that is to be divided into the *two parts* excepting the *old place*, the conclusion becomes highly probable, if not almost irresistible, that he intended it should be divided as early as practicable, in order to advance and promote the interests of all those, who appear to have been the exclusive objects of his bounty in regard to it.   And as to the circumstance of the plaintiffs not being mentioned or named in the clause, so much relied on by them, it is rather apparent from the whole tenor and scope of the will, that it was an omission which arose from inadvertence, and ought, therefore, to be supplied to fulfil the intention of the testator.

Judgment affirmed.