MERAMAN'S
HEIRS.
*vs*
CALDWELL'S
HEIRS.

---

EJECTMENT.

## Meraman's Heirs *vs* Caldwell's Heirs.

Case 10.

ERROR TO THE BULLITT CIRCUIT.

*Ejectment. Notice to quit. Possession. Husband and wife.*

December 11.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

ASSUMING, as the jury have rightfully found, that Wethers King, the patentee of 600 acres of land, gave 200 acres thereof to his daughter, upon her marriage with James Caldwell, about the year 1790 or 1791, and that about that time Caldwell and wife entered upon the 200 acres and continued to occupy it under the gift, until the death of the wife in 1816 or 1817, after which Caldwell, the husband, continued to occupy it until his death, in 1825; we are clearly of opinion that whether the gift was by deed or by parol, the possession of the husband under the gift to his wife, enured to the benefit of her title, and having been continued for more than twenty years, perfected her possessory title as against the patentee himself, who survived his daughter, the

The possession
of the husband,
of land under a
gift to his wife,
enures to the
benefit of the
title of the wife,
and if continued
for more than 20
years, perfects
her title, even
against the father
of the wife, the
patentee of the
land, who may
survive the wife.

donee, and that after the lapse of twenty years, neither the patentee nor his heirs, exclusive of the children of Mrs. Caldwell, could have recovered the possession from her husband during his life, nor from any person claiming under him or herself afterwards.  Although in case the gift were by parol, this bar was made effectual by a possession which, in point of law, is attributed to the husband, yet the same law and upon the same principle of unity and identity of husband and wife, pronounces that the possession taken by him in right of his wife, and under her title, has the same effect in support of her title as if it had been her own separate and independent possession.  The same principle applies, indeed, to the possession taken by one man in right and under the title of another.

But while in this latter case, the tenant might disclaim, and in process of time, free himself from subjection to the title under which he entered, the husband cannot, by any act during the life of his wife, place a possession held by or derived from him, in hostility to the title of his wife, under which he acquired it.  The law having entrusted him with her rights, will not, under such circumstances, allow him to defeat them.

However weak then the title of Mrs. Caldwell might have been, as derived from the parol gift of her father, and although it may have been at first, deposible at his will, it became perfect by the possession of her husband, who, on her death, became tenant by the courtesy, with a life estate in the land, under or out of her title which descended to her heirs, subject to his estate by the courtesy.  His estate being thus a part of their title or carved out of it, his subsequent possession operated to protect and strengthen it.  As his possession, in fact, continued to the time of his death, in 1825, making more than thirty years from the date of the gift; and as no parol disclaimer of the title of his wife or her heirs, no claim of title in himself, and not even a deed of bargain and sale importing a conveyance of the fee simple from himself, would have operated as a forfeiture of his life estate : *Robinson, &c.* vs *Miller,* (1 *B. Monroe,* 23,) and no act of greater efficacy is pretended, it follows that,

MERAMAN'S
HEIRS
*vs*
CALDWELL'S
HEIRS.

The law having intrusted the husband with the preservation of the rights of the wife, will not permit him to hold or to put in possession of another, to be held adversely, any property placed in his possession belonging to the wife during the coverture.

Where the husband is a tenant by the courtesy, his deed of bargain and sale conveys no greater estate than he held, and the statute of limitations does not commence to run until the death of the husband, against the heirs of the wife.

notwithstanding his deed of 1821, which is itself within twenty years before the commencement of this action, the heirs of his wife had no right to enter upon the land, and therefore, no right of action until his death. The statute of limitations, therefore, could not begin to run against them from an earlier period. And it would not have commenced earlier even if their father had delivered the possession under his deed of 1821. For that deed was effectual to pass his life estate, with the right of possession, until his death. Moreover, there is no evidence conducing to show that even upon his death, nor for several years afterwards, the possession passed to his grantee or to any one claiming under his deed. But as the statute could not begin to run upon the possession of Caldwell himself, nor on the possession of his grantee during his life, and as his death and even his deed were within twenty years before the commencement of this action, the state of the possession after his death, is not material. The action could not, in any view of the facts under the assumption first taken as to the origin of the possession, be barred by the statute of limitations. And there was no error to the prejudice of the defendants in the opinions of the Court in giving or refusing the instructions applicable to this point. If the possession was taken by Caldwell under the gift to his wife, the statute, although it operated upon that possession to strengthen the title of the wife and her heirs, could not operate against that title so long as the possession remained unbroken in the husband or others holding rightfully under him as husband or as tenant by the courtesy. And in reference to the evidence in this case, the Court properly instructed the jury that the statute did not begin to run until the death of James Caldwell.

The only remaining question necessary to be stated as affecting the merits of the case, is whether the Court erred in refusing the instructions importing that if the defendants had taken possession by the license and request of one of the lessors, an heir of Mrs. Caldwell, or in virtue of an alledged compromise between said heirs and the grantee of James Caldwell, who was also

If one who has entered as tenant or quasi tenant, attempt to set up title under another, he is not entitled to notice to quit.

the grantor of the defendants, a notice to quit or a demand of possession was necessary to authorize a recovery in this action. If there were no other reason for denying these instructions, they were properly overruled because they base the requisition of notice solely upon the manner in which the possession is supposed to have been acquired by the defendants, without any reference to the manner in which it was afterwards held by them. If they entered as tenants or *quasi* tenants of the lessors, heirs of Mrs. Caldwell, they might have been entitled to notice as long as they maintained that character. But as they, in fact, set up and attempt to make out title under James Caldwell and against the heirs of Mrs. Caldwell, it certainly could not have been assumed by the Court, that they had continued to hold under said heirs up to the commencement of this suit.

Whether the defendants have, by reason of the alledged compromise or otherwise, any equity against the lessors, we need not enquire, as such equity, if it exists, could not have been enforced in this suit. Nor do we deem it necessary to state the evidence bearing upon the nature of the gift from W. King. The question whether it was a gift to his daughter or to her husband, or to both jointly, was fairly placed before the jury, and they have found in conformity with the probabilities of the case, and as they were authorized by the evidence to find, that the gift was to the daughter. As King survived his daughter, his will devising the land to her was of course in operation as a transfer of title. There was, however, no objection to it as evidence, and no effect given to it by any instruction. No question, therefore, arises in this Court upon it. And the instructions having been in substantial accordance with this opinion, and the verdict in favor of a part of the lessors being sustained by the evidence, there was no error in not setting it aside for a new trial.

But the verdict finds the defendants guilty as to eleven out of thirteen parts of the land, naming the eleven lessors upon whose demises the verdict is based, and the judgment is general that the plaintiffs, the said children of L. Caldwell, recover their term, &c. In this

*Margin note, right:*

MERAMAN'S HEIRS
*vs*
CALDWELL'S HEIRS.

The verdict in ejectment being for eleven thirteenths, and the judgment for the plaintiffs generally—Held to be erroneous.

BARDSTOWN AND
GREEN RIVER T.
R. COMPANY.
*vs*
CALDWELL.

the judgment is erroneous. It should have followed the verdict in designating the extent of the interest recovered, by describing it as eleven thirteenths of the premises, &c., or in such other terms as would clearly show its nature and extent. This point has been frequently determined by this Court.

For this error in the manner of rendering the judgment, the judgment is reversed and the cause remanded, with directions to render a judgment in conformity with the verdict, as herein indicated.

*Grigsby* for plaintiffs; *Riley* for defendants.