No. 13,339.

## TOBIN ET AL. *v.* YOUNG.

LANDLORD AND TENANT.—*Denial of Landlord's Title.—Termination of Tenancy.—Notice to Quit.*—Where the tenant denies the landlord's title and asserts ownership, such a repudiation of the tenure terminates the tenancy, and a notice to quit is unnecessary.

EVIDENCE.—*Conversation Between Third Person in Absence of Party.—Inadmissibility.*—Evidence of a conversation between third persons in the absence of a party, is not admissible against the latter.

SAME.—*Exclusion of.*—Where questions are not asked a witness, there is no available error in excluding offered testimony.

SAME.—*Self-Serving Declarations.*—Written statements made by a third person through whom a party claims, are inadmissible against the opposite

party, if made without his knowledge. Self-serving declarations are not competent as a general rule.

SAME.—*Effect of Admissions.*—*Instruction.*—It is not error to refuse to instruct the jury as to what effect shall be given to admissions of a party.

From the Montgomery Circuit Court.

*T. E. Ballard, E. E. Ballard, M. E. Clodfelter, M. D. White* and *E. V. Brookshire,* for appellants.

*A. D. Thomas, J. F. Harney, W. H. Thompson, J. West* and *E. C. Snyder,* for appellee.

ELLIOTT, J.—The controversy in this case is as to the ownership and right of possession of one hundred acres of land ; the appellants claim title through Lafayette Young, deceased, and the appellee claims that he is the owner and that Lafayette Young was his tenant.

It is established by our decisions that where there is a conflict in the evidence this court will not attempt to determine on which side the weight is, but will accept as proof of the facts the evidence which the jury and the trial court acted upon, and will apply the law to the facts thus established. It is only where there is no legitimate evidence sustaining the conclusions of fact reached in the trial court that this court will disturb a finding or verdict. *Julian* v. *Western Union Tel. Co.,* 98 Ind. 327 ; *Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20 (28).

Accepting, as we must, the evidence which produced conviction in the minds of the jury, these material facts must be deemed to have been established : Lafayette Young, through whom the appellants claim, was the son of the appellee, and the appellants are his widow and children. For some time Lafayette Young and his family resided with the appellee not far from the land in controversy; but, in April, 1872, they resolved to seek and find a home for themselves. They made known their resolution to the appellee and after they had looked at some farms in the vicinity a proposal was made that they should occupy the land in dispute. This

proposal, however, was not made until after they had made some negotiations looking to the purchase of a tract of land called the " Stypes farm." To aid them in buying that farm the father of the wife of Lafayette Young offered to advance one thousand dollars, but the appellee objected to the purchase of the " Stypes farm," and suggested that his son should take the land now claimed by the appellants. For many years that land had been owned by the appellee. Lafayette Young went into possession and was living on the land at the time of his death, in April, 1883. During the time he occupied the land he made valuable and permanent improvements, and exercised acts indicating to outward appearance an ownership of the land. He was in possession for eleven years prior to his death, and his widow, with her young children, continued in possession for about two years after he died. Thus far the evidence is not conflicting in any material particular, but it is expressly conceded by appellants' counsel that upon the question of the contract under which Lafayette Young went into possession there is a direct and irreconcilable conflict. There is much evidence tending to prove that he went into possession as a tenant and not as a purchaser. What occurred after his death is thus stated by the appellee in his testimony. Speaking of a conversation he had with his son's widow, he said : " She asked me what terms I was going to give her. I don't know that I can give the exact language, but, at any rate, it was a question to know what I was going to do with her now that Lafayette was gone. I told her for the present I was going to give her and the children just the same advantages that Lafe had heretofore had. She insisted on having terms for a term of years. I told her no ; I did not want to do that. We would try it for a year, at the end of a year we would be governed by circumstances." The widow when called as a witness denied that she ever had any conversation with the appellee upon the subject of the terms and conditions on which she should continue in possession of the farm. The

theory of the appellants, as asserted in various modes, was that Lafayette Young held the land as a purchaser and not as a tenant. Acts were shown by the appellants in support of their claim as owners, but no evidence was given by them for the purpose of establishing the relation of landlord and tenant; on the contrary, their theory was that Lafayette Young held as a purchaser and not as a tenant. Their purpose was to make good their theory that the appellee did not own the land and that his son did own it, and the constant effort of counsel was to accomplish this purpose.

The appellants may, of course, avail themselves of evidence showing either the weakness of the appellee's title or the strength of their own, no matter from what source it may come. All defences are open to them except such as they have by their own acts concluded themselves from making. If they did not hold in the capacity of owners, but did, in fact, hold as tenants, they may avail themselves of their rights as tenants unless they have concluded themselves from asserting a defence founded upon their rights as tenants of the appellee. We assume, under the rule we have stated, that they were in possession as tenants, for this is the theory upon which the trial court proceeded, and it is that which all the evidence introduced by the appellee tended to establish. The question, in so far as it is affected by the evidence that the relation of landlord and tenant existed, is narrowed to this, have the appellants placed themselves in a position which disables them from successfully asserting that the appellee can not recover, for the reason that the tenancy had not expired and no notice to quit had been given?

The acts of the appellants in denying the title of the appellee, and in asserting that their ancestor held possession as owner, preclude them from successfully asserting any rights as tenants. The principle which rules this case was thus stated by the Supreme Court of the United States: "It is an undoubted principle of law, fully recognized by this court, that a tenant can not dispute the title of his landlord, either

by setting up a title in himself, or a third person, during the existence of the lease or tenancy." The consequences of a violation of this well settled rule are thus stated by the same court : " If the tenant disclaim the tenure, claim the fee adversely, in right of a third person, or his own, or attorn to another, his possession then becomes a tortious one, by the forfeiture of his right. The landlord's right of entry is complete, and he may sue at any time within the period of limitation." *Willison* v. *Watkins,* 3 Peters, 43. In the case of *Sims* v. *Cooper,* 106 Ind. 87, the question was before us for decision, and we held that where the tenant denied the landlord's title, and asserted ownership, such a repudiation of the tenure terminated the tenancy, and dispensed with a notice to quit. This holding is fully sustained by the adjudged cases and by the text-writers. 1 Wood Landlord and Tenant, 123 ; 1 Taylor Landlord and Tenant, section 472; Sedgwick and Wait Trial of Title to Land, section 387.

The decisions, indeed, go to the extent of holding that the denial of the landlord's title makes the tenant a trespasser. *Jackson* v. *Wheeler,* 6 Johns. 272 ; *Vincent* v. *Corbin,* 85 N. C. 108; *Meraman* v. *Caldwell,* 8 B. Mon. 32; *Stephens* v. *Brown,* 56 Mo. 23; *Fuller* v. *Sweet,* 30 Mich. 237.

The appellants' counsel refer us to a class of cases represented by *Whiting* v. *Edmunds,* 94 N. Y. 309, and affirm that the court, in the class of cases it represents, declared the rule to be different from that asserted in the authorities to which we have referred, but in this they are in error. What is decided in the case referred to is that a tenant can not deny his landlord's title, retain possession, and set the statute of limitations to running. The general doctrine we have stated is fully recognized, and the court, among other things, said : " But to do so effectively, and initiate an adverse holding, the tenant must surrender the possession to the landlord, or do something equivalent to that, and bring home to him knowledge of the adverse claim." It is perfectly . clear that the question in such a case as this is entirely dif-

ferent from that which arises where the tenant seeks to defeat the landlord by claiming to hold adversely after having acquired possession under the landlord. The suggestion of the distinction is sufficient without elaboration.

It is not too much to say that no doctrine can be found in the text-books or the decisions which supports the contention that a tenant may deny the landlord's title and yet defeat an action upon the ground that the landlord has not done all that he was bound to do. The old adage that "A man can not blow both hot and cold," precludes a tenant from asserting that he has rights as tenant, while denying that the relation of landlord and tenant exists. The doctrine expressed by the adage has found expression and illustration in the numerous cases which hold that a party will not be permitted to occupy inconsistent positions.

In commenting on the case of *Sharpe* v. *Kelly*, 5 Denio, 431, which, by the way, is directly against them, counsel for the appellants say : " The case holds that a party may acquire title consistent with that admitted by his entry as tenant. The appellants in this case claimed nothing more, they only asserted that appellee's title passed to them by contract." It is somewhat difficult to conceive how more could be claimed than that the appellee had parted with his title to the appellants' ancestor ; at all events, the claim is such as to preclude the appellants from asserting a tenancy in order to defeat the landlord or to compel him to do what he would have been required to do had they not disavowed his title and asserted title in themselves. By the assertion of title they informed the appellee that notice to quit would be unavailing, and thus by their own act relieved him from the duty of giving it. One of the elementary rules of law is that if a party to a contract repudiates it he relieves the other from giving notice or making a demand. *Vinton* v. *Baldwin*, 95 Ind. 433 ; *Willcuts* v. *Northwestern M. L. Ins. Co.,* 81 Ind. 300 ; *Turner* v. *Parry*, 27 Ind. 163 ; *Hanna* v. *Phelps*, 7 Ind. 21.

We have discussed the questions presented by the appel-

lants' argument, that their rights as tenants enable them to defeat the appellee, at more length than we need have done in view of the fact that the law is so well settled, but we have done so because of the earnestness of appellants' counsel, and the industry shown in the preparation of their brief. What we have said fully disposes of all the questions which arise in this branch of the case.

The questions which arise on the issue made by the appellants' assertion of title are presented by the ruling denying a new trial, and relate chiefly to rulings in admitting and in excluding evidence.

There was no error in excluding the testimony of Brookshire and Stypes as to a conversation which occurred concerning the purchase of a farm by Lafayette Young from the latter. The appellee could not be injuriously affected by a conversation not heard by him between third persons.

Other points made upon the rulings on the evidence may be disposed of by the application of the rule laid down in the case of *Higham* v. *Vanosdol,* 101 Ind. 160. That rule is this: Where questions are not asked a witness, there is no available error in excluding offered testimony.

The appellants called a witness to identify a policy of insurance which had been issued to Lafayette Young, and the appellee was permitted to ask on cross-examination what was said by Young at the time the policy was taken out. It is by no means certain that the questions were not proper on cross-examination, but we need not decide whether they were or not, for, conceding that they were not proper, still no error sufficient to warrant a reversal was committed. The appellee was entitled to prove the declarations of Lafayette Young, and the utmost that can be said is that it was not strictly proper to allow them to be brought out on cross-examination.

There was no error in excluding written statements of Lafayette Young of which the appellee had no knowledge.

Vol. 124.—33

Self-serving declarations are not competent as a general rule.

The court did right in admitting in evidence the written contract between the appellee and Henry Herman. The evidence warrants the inference that Lafayette Young knew of the contract, and as he did know of it, the fact tended to support the appellee's case, for the contract and the acts done under it were unequivocal assertions of title.

If it were conceded that it was error to admit in evidence the cross-complaint filed by some of the appellants, but which was afterwards withdrawn, still, the error, if it was one, could by no possibility have injured the appellants, since it was an assertion of the title they sought to maintain. But we are inclined to the opinion that the cross-complaint was properly admitted, and that it would have been error to exclude it. *Boots* v. *Canine*, 94 Ind. 408, and authorities cited; *Baltimore, etc., R. W. Co.* v. *Evarts*, 112 Ind. 533; *Louisville, etc., R. W. Co.* v. *Hubbard*, 116 Ind. 193.

The eighteenth instruction asked by the appellants was properly refused. It is not the duty of the court to direct the jury as to what effect shall be given to admissions of a party.

Some questions not specifically noticed by us in this opinion are argued, but we deem it only necessary to say that we have examined with care all of the questions presented, and are satisfied that there is no error justifying a reversal of the judgment.

Judgment affirmed.

Filed April 22, 1890; petition for a rehearing overruled Sept. 16, 1890.