# CHARLESTON.

MERRITT *et al. v.* HUGHES *et al.*

Submitted February 5, 1892.—Decided April 2, 1892.

1. PARTITION.

     A reversioner or remainder-man can not compel partition during the continuance of the particular estate.

2. PARTITION.

     A wife owning land in fee (not separate estate) whose husband has made a deed passing such estate as is vested in him as husband, can not, while such estate continues, compel partition.

3. STATUTE OF LIMITATIONS — LIFE-ESTATE — CONSTRUCTION OF STATUTES.

Where a wife is seised in fee of land (not separate estate) and her husband makes a deed purporting to convey the fee, but void as to the wife, such deed vests in the grantee a life-estate either for the joint lives of the husband and wife or by the curtesy according to facts; and the statute of limitations does not begin to run against the wife's reversion until the termination of such life-estate.

4. STATUTE OF LIMITATIONS — LIFE-ESTATE — CONSTRUCTION OF STATUTES.

Though such grantee be in possession twenty years during the continuance of such life-estate, yet that will not bar the wife's reversion under section 4 of chapter 104 of the Code. That section has no reference to a such case.

5. STATUTE OF LIMITATIONS — LIFE-ESTATE — CONSTRUCTION OF STATUTES.

A continuance of possession by such grantee for ten years after the termination of such life-estate would bar the wife's reversion under section 1 of chapter 104 of the Code.

6. STATUTE OF LIMITATIONS — LIFE-ESTATE — CONSTRUCTION OF STATUTES.

A wife owning land in fee (not separate estate) makes a deed purporting to convey the land in fee, but her husband does not join in the deed. The deed being void, possession by the grantee is adverse to husband and wife. Twenty years of such possession will, under section 4, c. 104, of the Code, bar her right, though she remained married during the whole twenty years; and suit to recover the land may be ·brought during coverture, though ten years of such possession have elapsed. This does not mean that if, after ten years, the coverture cease, there must not be suit within five years after it ceases, under section 3, c. 104.

*E. W. Wilson, J. Ruffner* and *Brown & Jackson* for appellant cited 34 W. Va. 107; 15 N. Y. 623; 48 Ill. 453; 52 Ill. 449; 19 Minn. 170; 4 Munf. 328; 3 Rand. 364; 2 Gratt. 340; 2 Min. Inst. 416.

*Mollohun & McClintic* for appellees cited Free. Co-Ten. & Par. §§ 440, 441; 4 Minn. 328.

BRANNON, JUDGE:

John Nugent died in 1859, the owner of land in Kanawha county, which descended to thirteen children. Two of these children are Lucy A. Merritt, wife of Moses Merritt, and Theresa Wright, wife of Washington Wright. Two

others of said children, George and Thomas Nugent, acquired the interests of all their coparceners, except those of Lucy Merritt and Theresa Wright. On 3d September, 1864, Washington and Theresa Wright made a deed for their interest to George and Thomas Nugent. On 1st August, 1864, Lucy A. Merritt made a deed for her interest to George and Thomas Nugent, who have since sold various parts of said lands to different persons, and these persons have sold to others, so that the lands are owned by various persons. Before their father's death said Lucy A. Merritt and Theresa Wright were married.

Lucy A. Merritt and husband and Theresa Wright and husband, on 30th July, 1884, brought a suit in equity in the Circuit Court of Kanawha county against James Hughes and others, owners of said lands, claiming that the certificate of acknowledgment of the deed from Theresa Wright and husband to George and Thomas Nugent was defective, and the deed void as to Theresa Wright, leaving her still owner of her interest in the land; and that, as the husband of Lucy A. Merritt did not join in her deed to George and Thomas Nugent, that deed was void, and left her still owner of her interest. Upon demurrer the bill was dismissed, and the Merritts and Wrights appeal.

Some important questions arise in this cause. It is conceded, and is unquestionable, that the deed from Mrs. Wright and her husband is void because of insufficiency of the certificate of the wife's acknowledgment, and that the deed from Mrs. Merritt is void as to both her and her husband because the husband did not unite therein with his wife; and thus the estates of the wives in the land are wholly unaffected by said deeds.

It is clear also, that when title by descent vested in the married women on the death of their father, their husbands became by virtue of their marital rights under the then existing law entitled to the possession and rents and profits of the interests of their wives in said land during the joint lives of the husbands and wives, having thus a life-estate.

The deed of Mrs. Wright and husband, though void as to her, is valid as to the husband, and passed to the grantees an estate during the joint lives of husband and wife. Thus

arises the question whether they did not bring this suit for partition prematurely. Could they sue while they were both living, and their vendees were yet entitled to hold possession under such life-estate, conferred by such deed?

Mrs. Wright was not entitled to possession until her husband's death—a reversion after the termination of a life-estate. Can a remainderman or reversioner maintain a bill for partition while the life-estate exists? I think it very clear that he can not.

The reason, for which the law enables a party to compel partition, is that a possession common to all the joint owners, giving all right to rents and profits, entailing clashing management and confusion, and forbidding permanent improvement by individuals, may be severed, and the land divided, so that each may enjoy his separate parcel, and do with it as he will.

Prof. Minor, in 2 Inst. 416, states the law to be that "an outstanding, continuing, particular estate for life existing in another in the land" will not forbid a partition; but the authorities he cites do not support the text.

Freeman on Partition (section 446) says : "It is a general rule prevailing in England without exception and also throughout a majority of the United States, that no person has right to demand any court to enforce compulsory partition, unless he has an estate in possession—one by virtue of which he is entitled to enjoy the present rents or possession of the property as one of the co-tenants thereof." See, also, section 440. Upon examination of numerous authorities I find this position of Freeman fully sustained.

In *Nichols* v. *Nichols*, 28 Vt. 228, it is held that one holding under a deed an undivided half of a farm, which reserved a life-estate, can not compel partition, as right to immediate possession is necessary to maintain the proceeding.

In *Brownell* v. *Brownell*, 19 Wend. 367, it is held that "proceedings in partition under the statute can be instituted only by a party who has an estate entitling him to immediate possession." The same rule is recognized in *Stevens* v. *Enders*, 13 N. J. Law 271, and in Connecticut in *Culver* v. *Culver*, 2 Root, 278.

In *Packard* v. *Packard*, 16 Pick. 191, it is held that partition can not be sustained where the party has only a reversionary interest, not a vested estate in possession. Same principle in Pennsylvania, in *Ziegler* v. *Grim*, 6 Watts 106; and in *Brown* v. *Brown*, 8 N. H. 63, held, that a "partition can not be maintained by one who has only an interest in reversion or remainder after a life-estate."

In note to *Nichols* v. *Nichols*, 67 Amer. Dec. 703, it is stated: "In nearly all of the United States it is a necessary prerequisite to the maintenance of an action for the partition of lands that the petitioner have, at the commencement of his action, an actual or constructive possession, in common with the defendants, of the land. Both title and possession, or right of possession, must be vested in the petitioner. *Schori* v. *Stephens*, 62 Ind. 441; *Florence* v. *Hopkins*, 46 N. Y. 182; *Hughes* v. *Hughes*, 63 How. Pr. 408; *Chapin* v. *Sears*, 18 Fed. Rep. 814; *Sullivan* v. *Sullivan*, 66 N. Y. 37; *Brownell* v. *Brownell*, 19 Wend. 367; *Hoyle* v. *Huson*, 1 Dev. 348; *Whitten* v. *Whitten*, 36 N. H. 332.

"*Remainder-man or reversioner can not compel.* A legitimate application of this rule to the case of reversioners and remainder-men would prevent their maintaining proceedings to enforce partition, and such is unquestionably the law. This is the doctrine of the principal case, and it is supported by *Schori* v. *Stephens*, 62 Ind. 441; *Hughes* v. *Hughes*, 63 How. Pr. 408; *Tabler* v. *Wiseman*, 2 Ohio St. 208; *Sullivan* v. *Sullivan*, 66 N. Y. 37. In this latter case the court say: 'There are obvious reasons why a remainder-man should not, especially as against tenants in possession, whether of a term for years, for life, or in fee, be entitled to institute proceedings. Any partition which might be made at his instance, though equal when made, might be unequal when the estate should vest in possession.'"

I will add that partition should be made according to quality and value, not quantity. The values may be different at the close of the particular estate from what they are when the partition is made. See, also, *Striker* v. *Mott*, 2 Paige, 396, (22 Am. Dec. 646, and note.)

The remainder-man can not get immediate possession, though he should have partition. Why give him partition

before his right vests in actual possession? He can have by virtue of his estate ample process of law to prevent waste and preserve his estate without partition. Virginia cases cited for the proposition that a remainder-man may sustain a suit for partition do not apply. In *Otley* v. *McAlpine*, 2 Gratt. 340, the tenant by curtesy sued, but he was owner of one of the shares in fee, and thus entitled to sue. In *Wisely* v. *Findlay*, 3 Rand. (Va.) 361, Wisely owned in fee, and there was no life-interest in the way. In *McClintic* v. *Manns*, 4 Munf. 328, there was no life-estate, only a charge of a living. Hence, when this suit was brought, Mrs. Wright and husband could not bring it, because of the out-standing life-estate in their vendees, or those claiming under them. This does not apply to ordinary cases of dower.

But counsel contend that Mrs. Wright and husband ought to have right to sue for partition, because the statute of limitation is running against Mrs. Wright, and, if she has to wait until her husband's death determines the life-estate conferred upon George and Thomas Nugent by the deed of herself and husband, her title will have been lost; that, as the statute is running against her, the law must concede her the right to sue to protect her title.

This puts to us a question about which there prevails a difference of opinion in the profession, and one much discussed, and that is: Is the statute running against Mrs. Wright during the life of her husband? I answer that it is not. By the deed from Mrs. Wright and her husband, George and Thomas Nugent acquired an estate during the joint lives of Mrs. Wright and her husband; for, though the deed is void as to the wife, yet, the husband being as husband vested with a freehold estate during the joint lives of himself and wife, and the deed being valid as to him, that deed passed such estate to said Nugents, that is, an estate for life, at least during such joint lives, and, if they had issue, and the husband survive the wife, then an estate for his wife. *Dejarnette* v. *Allen*, 5 Gratt. 513; *Laidley* v. *Land Co*, 30 W. Va. 505 (4 S. E. Rep. 705) ; *Land Co.* v. *Laidley*, 32 W. Va. 135 (9 S. E. Rep. 61); *Wyatt* v. *Smith*, 25 W. Va. 815.

Here, then, is a particular estate—a life estate—carved out of the fee by the act of the parties under the law. Though the intent was to pass a fee by the deed, in law it passed only a life-estate. Now, it is a principle everywhere admitted that the possession of a tenant for life is not adverse to the remainder-man or reversioner, and therefore the statute does not begin to run against them until the end of the life-estate. Hutch. Land titles, § 352; Ang. Lim. §§ 371, 372; *Jackson* v. *Schoonmaker*, 4 Johns. 390; Co. Litt. 240b; Wood, Lim. 527; Tyler, Eject. 923, 946; *Merrit* v. *Smith*, 6 Leigh, 493; 1 Rob. Pr. (New) 508, 510; 3 Washb. Real Prop. 132, 133; *Ball* v. *Johnson*, 8 Gratt. 285.

It is certainly undeniable that Mrs. Wright had no right of possession, no right of entry, until the death of her husband, and of course her husband had none, as the husband's deed gave his grantees the life-estate above specified; and surely, where there is no right of entry, the statute is not running, as it is only against an existing right of entry that the statute runs; where no right of entry, there no bar. *May* v. *Hill*, 5 Litt. (Ky.) 307; *Miller* v. *Shackleford*, 3 Dana 295; *McCorry* v. *King*, 3 Hump. 267; *Jackson* v. *Johnson*, 15 Am. Dec. 434.

This is the very letter of our statute, for it fixes a limitation within ten years after "the right to make such entry" accrued. It is because the wife alone, or she and her husband, have no right of possession, but must wait until the close of the life-estate conferred by the husband's deed before making entry or bringing action, that the statute does not run against her. Shall she be compelled by law to wait, and, after waiting, be told that the statute has been running while she was waiting, and has barred her right?

It has been frequently decided in cases where the husband and wife have made deeds purporting to convey the fee, but void as to the wife for insufficient certificate or other cause, or where the husband alone has conveyed the fee in the wife's land, that she or her heirs may, upon the husband's death, recover the land, notwithstanding the period fixed by the statute as a bar has run out, and that the statute does not begin to run until the death of the husband.

In *Gill* v. *Fauntleroy*, 8 B. Mon. 186, it was held: "Where husband and wife unite in a deed of lands of the wife, which is not so acknowledged as to pass the wife's right, she has no cause of action during the life of the husband, and therefore no statute of limitation operates upon her right until after his death."

In *Meraman* v. *Caldwell*, 8 B. Mon. 32, it is held that a conveyance by the husband "conveys no greater estate than he had, and the statute does not commence until the death of the husband against the heirs of the wife."

In *Miller* v. *Shackleford*, 3 Dana, 289, the same is held, and the court said: "During the life of Shackleford neither he nor Mrs. Shackleford had any right of entry into the land conveyed to Barnett, for during his life his deed was operative, and conferred the legal right of possession upon his grantee. But upon the death of Shackleford the plaintiff's right of entry accrued, and Barnett's possession, which had before been rightful and consistent with the title of Mrs. Shackleford, which was in fact under that title, contributing to uphold and strengthen it, became immediately wrongful, unless held under her; and the statute of limitations could not have commenced running in favor of Barnett against Mrs. Shackleford before that time, for then, and not before, had she a right separate and distinct from that of Barnett himself. 'Length of possession during a particular estate, as a term of one thousand years, or under a lease for lives, as long as the lives are in being, gives no title. But if a tenant *per autre vie* hold over for twenty years after the death of the *cestui qui vie*, such holding over will, in ejectment, be a complete bar to the remainder-man or reversioner, because it was adverse to his title.' Per Lord MANSFIELD, in *Doe* v. *Prosser*, Cowp. 217. And no title can be barred by mere length of possession unless the possession is adverse, as has often been decided."

That was the case of a deed from husband and wife, but void as to the wife because of defective acknowledgment.

In *Mellus* v. *Snowman*, 21 Me. 201, where the wife became entitled as heir during coverture, and the husband conveyed the fee, and his grantee held possession over thirty years, the husband still living, it was held the wife might, after

his death, make an entry and recover the land. The court said, she could not enter during the life of the husband, and, as she entered within twenty years after her first right of entry accrued, she could recover.

In *Bolling* v. *Teel*, 76 Va. 487—a case of such void deed —it is held that, as the grantee under the deed was entitled to the husband's curtesy, the statute did not run against the wife until his death.

This Court, in *Land Co.* v. *Laidley*, 32 W. Va. 134 (9 S. E. Rep. 61) held that where a deed from husband and wife of the wife's land is void as to the wife for defective acknowledgment the grantee is entitled to possession until the death of the husband, and the wife has till then no right of entry, and till then the statute does not run against her.

The same doctrine above stated is found in *Constantine* v. *Van Winkle*, 6 Hill 177.

In Tennessee in *McCorry* v. *King*, 3 Humph. 267, where a husband alone conveyed his wife's land in fee, it was held that the statute did not run against the wife's heirs until death of husband ; and in *Guion* v. *Anderson*, 8 Humph. 327, this doctrine is approved for two reasons : *First*, the husband had estopped himself from suing by his deed, and the wife could not sue alone, nor could her heirs until his death, and thus there was no right of entry until his death ; and, *second*, the curtesy in the husband was a particular estate, and the husband's vendee's possession was the possession of the wife, the particular estate and remainder constituting one estate, and his possession consistent with and subordinate to the wife, not adverse. See Ang. Lim. § 371; Wood, Lim. 527, 528.

But it may be said that if it is true that the statute runs against the wife only from her husband's death, then one in possession under such conveyance for fifty years is not protected by that long possession ; and how can this be, in view of section 4, c. 104, Code 1891 ? Section 1 having provided a limitation of ten years for exercising right of entry or bringing action, and section 3 having provided, in case of a married woman, that if, when the right of entry or action accrue, she be married, she or those claiming under her shall have five years after she becomes single to ex-

ercise the right of entry or bring action, section 4 then provides :

"No such entry or action shall be made or brought by any person who, at the time at which his right to make or bring the same shall have first accrued, shall be under any such disability, or by any person claiming through him, but within twenty years next after the time at which such right shall have first accrued, although the person under disability at such time may have remained under the same during the whole of such twenty years, or although the term of ten years from the period at which he shall have ceased to be under any such disability, or have died, shall not have expired."

Observe the language of this provision, and it will be seen that to bring a person under it, and limit him to twenty years, he must be one to whom, while under disability, a right of entry accrued—one against whom the statute has begun to operate. If he is not such a person, the proviso does not apply to him. Now, we have just shown that this married woman, whose deed is void as to her, but valid as to her husband's interest, has no right of entry until the husband's death. She can not enter, or sue for her land, while her husband is living, against the conveyance of her husband, which carved out of her estate a life-estate, and left her only a reversion in fee after its termination. She is the owner of the reversion, which can not vest in actual possession until the life-estate vested in the defendant shall end. Hence she does not come under the twenty year provision.

Then, I am asked: "If the married woman in the case supposed does not fall under such proviso, and it does apply to married women, what married women would fall under it? What is the use of the proviso? When does it apply?" I answer that, while it does not apply to a married woman whose husband has lawfully conveyed away a life-estate out of her fee, so that neither she nor her husband nor both jointly can sue until its end, yet it does apply where that is not the case, where the person in possession is holding not under or from them but adversely to both, as in the case of a stranger under a hostile title—cases

where there is in the husband and wife a right of entry or action; so that, if they omit to exercise such right, they are guilty of negligence and laches.

The case of *Caperton* v. *Gregory*, 11 Gratt. 505, illustrates this. There a father left land and children, several of them married women. A son was in possession claiming the whole under his father in exclusion of his married sisters, and it was held that his possession was adverse to his sisters, and that those sisters yet living, against whom the seven-years limitation fixed by the then statute had already run out, could not recover during coverture, as husbands and wives during coverture were jointly seised and required by the statute to exercise their right of action, for they had the right of entry, as the court said. By saying that these living sisters could not recover during coverture, the court avoided any inference that they could not, after the coverture ceased, sue and recover under the clause giving them three years after the removal of the disability, though more than seven years had elapsed.

Now, had there been a provision like that above referred to, fixing twenty years as the maximum limit of recovery for persons under disability, and having right of entry and action, the cases of the married women in the case of *Caperton* v. *Gregory* would have fallen within it, and they could not have recovered, although for the whole period they had been under the disability of marriage.

On the other hand, had those women and their husbands made deeds to their brother, void as to the women but good as to the husbands, then they would not have fallen under the twenty year provision, or been barred by that period, as they had no right to sue until the deaths of their husbands. There are many such cases of persons under disability of marriage, who have made no conveyance, and against whom there are adverse claimants, and who can and ought to sue or be barred, and hence the statute can have useful application; but the justice of applying it against persons who can not possibly maintain an action, in favor of one who holds such particular estate, and who can not be sued, is not by me perceived.

The case of *Caperton* v. *Gregory* is authority to show that

the statute does run against a wife owning lands and against her husband during coverture, and, as the law then stood (Act 1836-37, c. 8) barring them after the lapse of the. common period of bar, however long the coverture exist, with a revival of the wife's right upon the cessation of the coverture for the period fixed by the saving clause in favor of persons under disability, during which period she or her heirs might sue, notwithstanding she and her husband had already been barred during coverture.

But *Caperton* v. *Gregory* does not touch the case where the husband alone, or he and she together, make a deed, void as to her, passing the husband's right, so that they could not, nor could either, sue the grantee. *Caperton* v. *Gregory* is yet authority to show that husband and wife have right of entry and action, notwithstanding coverture, against one claiming the wife's land, not under their conveyance, but adversely, and that, as they have right of entry and action, they must sue before the proper limit for the particular case expires, as the statute is operating against them. Various well-considered cases sustain this proposition. *Melvin* v. *Proprietors*, 16 Pick. 161; *McCorry* v. *King*, 3 Hump. 267; *Carter* v. *Cantrell*, 16 Ark. 154; *McDowell* v. *Potter*, 8 Pa. St. 189.

Here the bar is, in first instance, ten years. If, after it, coverture cease, suit must be in five years thereafter. In no event can it exceed twenty years, the maximum. The reasons for this doctrine are well stated in the case of *Melvin* v. *Proprietors, supra*, in the Massachusetts Supreme Court. Though under the separate estate statute, as time moves on, it is being relegated to the past, it will extensively apply for years yet to come. "That they, Melvin and wife, were seised in fee in right of the wife before and at the time of the entry by Kittredge can not, we think, be controverted. In all real actions brought by husband and wife to recover the wife's land, their estate is always so stated, and is so stated because such is the legal nature of their estate. By marriage the husband and wife are regarded in law as one person, the legal existence of the wife being incorporated and consolidated into that of the husband, and he has the absolute authority to act for her but not to bind her in

all cases. He may dispose of her chattels, real or personal but can not alienate her real estate without her consent. The husband acquires by the marriage a freehold estate, but not the fee, which still remains in the wife. But both together have the whole estate, and therefore in law they are both considered as seised in fee and must so state their title in pleading.

"The husband can not aver, in pleading, that he alone is seised in fee in right of his wife, because the fee is in the wife, and of this he is seised jointly with her. This is the established form of pleading such a title, and it has been truly and very frequently remarked that the forms of pleading generally may be relied on as the most accurate test of legal principles. It is laid down by Comyn (Dig. 'Baron & Feme,' 2 D.) that, if *baron* and *feme* are seised, they ought to plead that they are both seised *in jure uxoris* and not that the husband is seised, and so say all the authorities. *

"These cases seem decisive, not only as to the form of pleading, of which there can be no question, but they decide that the form of pleading is in conformity with the exact title which the husband and wife have in the wife's land while they remain seised. It seems unnecessary to refer to any further authorities on this point, for I apprehend that it is quite clear that the husband can not be seised in fee of his wife's land, unless she also is seised; that he acquires no seisin in fee by the marriage; for he, at most, acquired only a freehold estate, and, unless the wife continues seised, the fee would be in abeyance. The husband has a life-estate, and the wife an estate in fee, and, by consolidating the two estates, both, in legal contemplation, are considered as seised of the whole estate.

"The next question to be considered is whether Melvin, the elder and his wife were disseised by the entry of Kittredge. We think it very clear that they were. They were actually ousted of their seisin and possession, and the seisin and possession of Kittredge was substituted therefor, and this unquestionably amounted to a disseisin of both, as both at the time of the entry were seised. Co. Litt. 153; *Clapp* v. *Bromagham*, 9 Cow. 552.

"We think it equally clear that a right of entry imme-

diately thereupon accrued to both the husband and wife. It has been argued that the husband alone had right of entry, that he had a life-estate in the premises, and that no right of entry accrued to the wife until his death. It is true that, if Kittredge had held under the husband, the wife would have had no right to enter, nor could she enter against the will of her husband; but with his consent, express or implied, she had an unquestionable right to enter. Her right of entry, as against Kittredge, was perfect, although, in the exercise of her right, she was subjected to the control of her husband.

"There is no doubt he had a right to create a particular estate, and so he might discontinue his wife's estate by foeffment, and by the common law she would have no right to enter on the feoffee, even after her husband's death, but was driven to her action *cui in vita ;* but in the present case Melvin and his wife were jointly seised and disseised, and either or both might enter on the disseisor. That she was *sub potestate viri* does not prevent the right of entry from accruing to her ; otherwise no right of entry could accrue or descend to a *feme covert*, and the saving clauses in the several statutes of limitation in favor of *femes covert* would be useless and senseless.

"A *feme covert* is capable of purchasing, but the husband may disagree, which will avoid the purchase; and if he neither agrees nor disagrees, the purchase is good. Co. Lit. 3 a. In like manner a right of entry may descend or accrue to her and her entry will be lawful, provided the husband does not expressly disagree; for his consent is presumed, it being for his advantage. We are therefore of opinion that the right of entry accrued to the demandant's mother immediately after the entry and ouster by Kittredge." See *Dejarnette* v. *Allen*, 5 Gratt. 513 ; *Wyatt* v. *Smith*, 25 W. Va. 815.

To such a case as that the twenty year provision in sec. 4 of chap. 104 of the Code would apply.

Since writing the above I have met with authority which confirms the view above expressed. Section 4 of ch. 104 of our Code is section 4 of ch. 149 of the Virginia Code of 1849, and it first found place in the Virginia law in 1849,

47

having been incorporated in the Code of that year from
the English act of 3 & 4 Will. IV, ch. 27, s. 17. The revisors
of that Code in recommending said section pointedly say that
in case where a conveyance by the husband has been made
vesting his grantee with a life-estate, the wife, whose hus-
band had lived out the period specified in the section could
not be barred, "for under it the right of the wife to bring
an action must be deemed to have first accrued at the death
of the husband."

In *Doe dem. Corbyn* v. *Bramston*, 3 Ad. & El. 63 (30 Eng.
C. L. R. 30) where a married woman owning land in fee
died and afterward her husband died, and her son brought
ejectment after forty years (that being the period of the
English statute answering to the twenty years under sec-
tion 4 of ch. 104 of our Code) it was held barred; and the
reason given is that said section 17 of the statute of Wil-
liam IV barred it. Sugden speaking of the statute and of
said decision says: "This is a direct decision that forty
year's possession, although not adverse in the sense of that
expression under the old law, will gain title. But a con-
veyance by husband and wife of her estate not operative to
bind her, would not make the time run against her until
her husband's interest which passed by the conveyance de-
termined. Time will not run until after the death of ten-
ant for life, where the possession can be referred to his
tenancy." 2 Sug. Vend. * p. 482.

The case of *Jumpson* v. *Pitcher*, 13 Sim. 327 sustains
Sugden's text. There the High Court of Chancery held:
"If husband and wife, being seized in fee in right of the
wife convey to a purchaser, by deed without fine; the wife,
if she survives, and if not, her heir may on the husband's
death recover the land, notwithstanding the purchaser may
have been in possession for more than forty years." It was
decided under the statute of William IV. The Vice-
Chancellor said: "I must say that, in my opinion, there is
a very material distinction between the case of a husband
and wife making the possession derelict, as it was in the
case of *Doe* v. *Bramston*, and the case where the husband
and wife are seized in fee in right of the wife, and the hus-
band, by a conveyance which does not bind the wife, pur-

ports to convey the fee; because the effect at law is that that conveyance merely passes to the grantee of the husband that estate which he had and might have held during the coverture." He went on to hold that really the grantee held under the husband and wife by reason of the lawful estate which the husband could create; and that the principle that the statute does not run against the reversioner or remainder-man until the termination of the particular estate applied.

This case was decided in 1843. When we adopted the statute of William in our Code of 1849 we adopted the construction it had received in England, under a familiar rule of construction.

Upon consideration of this complicated question, I conclude that Mrs. Wright being yet a married woman, the statute is not running against her, and she can not justify her right to sue before the death of her husband on the claim that the statute was about to bar her right when she brought this partition suit.

I must not forget to refer to *Cooley v. Porter*, 22 W. Va. 130. Counsel for appellant cited that case as holding a different doctrine from the conclusion we reach, and as if it held that against a married woman situated as is Mrs Wright the statute runs during coverture from the beginning of defendant's possessions, and that twenty years would bar her, though she was a married woman all that time. That case by no means holds that proposition, and is not in conflict with our conclusion in this case. That was the case of a married woman owning land, making a deed for it without her husband's joining in it. It was for that reason void as to the wife, passing nothing, and as the husband was no party to it, it did not confer upon the grantee his life-estate, which is the crucial fact in this case as to Mrs. Wright. That deed from the wife alone did not for one moment debar either husband or wife from suing at once. They had a right of entry and action from the first moment of John Porter's possession.

Let us now dispose of the case as to Mrs. Merritt and her husband. In the deed which she made to George and Thomas Nugent, her husband did not join; and what has

been said above, and the authority of *Cooey* v. *Porter, supra,* as this case is like that, will show that the statute began to run against her and her husband as soon as the Nugents took possession under her deed. She might have sued in ejectment or for partition at any moment. But she need not rest on the fact that the statute was running against her to warrant her suing for partition, as her deed was void, and she did not like Mrs. Wright have to wait until the death of her husband, as her husband never passed his life-estate. She could sue as a parcener. Had she sued within ten years from the date of her deed, there could have arisen no question as to the statute; but she and her husband slept upon their rights more than ten years, which, according to the principles laid down in *Caperton* v. *Gregory,* and other authorities above cited, would bar them during coverture, with a revival of her right of action, after her disability should cease; but if, when it should cease on her husband's death, twenty years should have passed since the date of her deed, her right would be barred, it may be thought.

Certainly *Caperton* v. *Gregory* and other cases above cited show that after the period of bar under the statute has run against the joint seisin of husband and wife, they can not sue during the coverture during the time after the period of bar has ended and the cessation of the coverture; but when the coverture ends, a greater period than twenty years may have passed. Is in such case the wife's right forever gone? We must not reach this unjust result, if there be a plausible path out of the difficulty.

The legislature surely intended to recognize coverture as a disability hindering her, and as certainly intended to give her a time after the cessation of such disability within which to sue, but did not intend to excuse her more than twenty years. Shall she lose all the time between the close of the ten years fixed as the statute limitation and the close of the coverture? She would, under *Caperton* v. *Gregory.* But when that decision was made no such provision existed as that above quoted from section 4, c. 104, of the Code, providing that the saving on account of disability should not keep alive the right of action more than twenty

years. The insertion of that feature for the first time in the Code of 1849 did not expressly but did impliedly enact that she might sue any time during the coverture, even if the ten years had elapsed, so it be within twenty years, because it surely intended to give her twenty years, and not say in one breath that she should have twenty years, and in another take half of that time away. Any other construction would lead to injustice, and a defeat of what must have been the legislative purpose. This amendment changes the rule in *Caperton* v. *Gregory* in one respect, and only in one—that is, it allows husband and wife, though ten years of adverse possession may have elapsed during coverture, ten years more within which to sue, though the coverture yet continues. It surely did not intend to count all the period of coverture against her, and yet prohibit suing for a large portion of it.

I do not intend any inference, that if, after ten years of possession expire, the marriage cease, there must not be suit within five years after its cessation, under section 3 of chapter 104.

It will be understood that I do not refer above to land that is a wife's separate estate.

Merritt and wife had right to sue when they did sue, and, if Mrs. Wright had not been made plaintiff, she must have been made a defendant, and her position as coplaintiff would not vitiate the suit. Mrs. Merritt, being entitled to immediate partition, would not be delayed simply because Mrs. Wright could not sue for partition until her husband's death; and in the partition, as incident to relief to Mrs. Merritt, allotment should be made of Mrs. Wright's share to come into possession upon her husband's death, if she survive him, or, if he survive her, and he is entitled to curtesy, then to come into her heirs' possession on his death.

It was error to sustain the demurrer and dismiss the bill, and the decree must be reversed, and the cause remanded for further proceedings as here indicated.

REVERSED. REMANDED.