# CHARLESTON.

## CENTRAL LAND CO. v. LAIDLEY.

Submitted January 16, 1889.—Decided February 11, 1889.

32  134
34   61
32  134
36  361
36  800
32  134
42  483
32  134
49  392
32  134
52  626
52  631
32  134
59  110
32  134
63  383

1. DEED—MARRIED WOMAN—SEPARATE ESTATE—CERTIFICATE OF ACKNOWLEDGMENT—EJECTMENT.

If a deed from husband and wife conveying land of the wife be void as to her because of defective certificate of her examination and acknowledgment, and after the death of her husband she convey the land to another with notice of the former deed, yet the second purchaser will not be affected by such notice, the former deed being void and passing no right legal or equitable, and the second purchaser does not hold the land as trustee for the first purchaser, and equity will not compel him to convey to the first purchaser nor will it enjoin the second purchaser from prosecuting an action of ejectment to recover the land from the first purchaser's possession or that of his vendee. (p. 139.)

2. DEED—REFUNDING PURCHASE-MONEY—WARRANTY—MARRIED WOMAN—SEPARATE ESTATE.

Nor will equity refund to the first purchaser or his vendee the consideration paid by the first purchaser by personal decree against second purchaser, or by charging it on the land. The covenant of warranty in the deed binds the woman no further than to pass her land even if valid. (p. 142.)

3. DEED—MARRIED WOMAN—SEPARATE ESTATE—CERTIFICATE OF ACKNOWLEDGEMENT—ESTOPPLE.

Though during coverture the wife bring·suit against her husband and others to assert her right to land acquired by her husband in his name with the consideration paid by such first purchaser, reciting in her pleading, that she had executed such deed to such first purchaser and received the consideration, and obtained a decree giving her such land, and declaring it her separate estate, that will not estop her or such second purchaser, from recovering the land from the first purchaser or his vendee. (p. 140.)

4. DEED—MARRIED WOMAN—RATIFICATION.

Though in such suit she so recite her former deed, and though she and her husband make a deed to another person for one acre within the bounds of the tract mentioned in the void deed, which that deed had reserved to her, describing it as the one acre reserved in the void deed, referring to that deed as a deed, yet this is no ratification of such void deed. During coverture she cannot ratify such void deed by mere admissions or recitals or other acts *in pais*, but only by acknowledgement of the void deed, or the execution of another instrument with privy exam-

ination, acknowledgement, and recordation, as prescribed by the statute.   (p. 140.)

5. DEED—MARRED WOMAN—SEPARATE ESTATE—HUSBAND AND WIFE.

Where by deed land was conveyed directly to a married woman prior to the Code of 1868, such conveyance did not create in her a separate estate, but the husband become entitled to a freehold estate in the land, which would continue at least during the joint lives of the husband and wife, with remainder in fee to the wife.   (p. 143.)

6. DEED—MARRIED WOMAN—HUSBAND AND WIFE—CERTIFICATE OF ACKNOWLEDGEMENT—RIGHT OF ENTRY—STATUTE OF LIMITATIONS.

In such case, if the husband and wife by a deed void as to her for want of a proper certificate of her examination and acknowledgement convey the land to a party and put him in possession, such purchaser is entitled to hold that possession until the death of the husband, and the wife or her heirs or any one claiming under them has no right of entry until the husband's death, and right of action does not accrue to them, nor does the statute of limitations run against them, until his death.   (p. 143.)

*J. H. Ferguson* and *Simms & Enslow* for appellant.

*Brown & Jackson* and *J. B. Laidley in pro. per.* for appellee, Laidley.

BRANNON, JUDGE:

By deed dated 18th August, 1865, Rebecca J. Everett conveyed to Sarah H. G. Pennybacker then a married woman 240 acres of land now within the city of Huntington.   By a deed dated 25th February, 1870, Sarah H. G. Pennybacker and her husband, John M., united in a deed purporting to convey said land to C. P. Huntington; and by deed dated 16th October, 1871, Huntington conveyed it to the Central Land Company.   Huntington took possession, and after him the Central Land Company, and it laid off a large part of said land into lots, streets and alleys, sold many lots, and buildings have been erected thereon.   Mrs. Pennybacker's husband died 5th May, 1881, and she by deed dated 26th January, 1882, conveyed said land to John B. Laidley, who had full notice of said deed to Huntington when he took his conveyance.   In March, 1882, Laidley brought an action of ejectment against the Central Land Company and others to recover

this land, and on its trial there were a verdict and judgment for defendants. Upon a writ of error to said judgment it was reversed, and the action of ejectment was remanded for re-trial to the Circuit Court of Cabell county, where it is now pending.

On the decision by this court of the writ of error, as will be seen from the case of *Laidley* v. *Land Co.*, 30 W. Va. 505, (4 S. E. Rep. 705,) the said deed from Mrs. Pennybacker and her husband to Huntington was held void because of defect of the certificate of the privy examination and acknowledgment of Mrs. Pennybacker.

Pending said writ of error, the Central Land Company brought a chancery suit against Laidley and others, alleging the facts above stated; and further that Laidley procured his deed from Mrs. Pennybacker by misrepresenting to her, that she was conveying a dower only, and paid her only $500.00 for it, whereas Huntington had paid $11,000.00 and the land was worth at date of Laidley's deed $30,000.00; and that it had sold divers lots to the Chesapeake & Ohio Railroad Company and others, who had built railroad tracks and houses thereon, and relying on adverse possession from the date of the deed to Huntington; and that Laidley when he took his deed had full knowledge of the deed from Pennybacker to Huntington, and from Huntington to the land company, and of the sales of said lots. Said Land Company further alleged, that in 1872 Mrs. Pennybacker brought a chancery suit against her husband and others, in which she stated, that she had on payment to her of $11,000.00 consideration conveyed the land to Huntington, that it was her separate estate, and that her husband had agreed to invest the money in other land for her, but had wrongfully invested it in his own name in two farms, and which farms she sought to have declared her separate estate and conveyed to her; and that a decree had been rendered in said suit declaring her entitled to one of those farms,—the Noel farms—by reason of the investment therein of money arising from said sale of her land to Huntington; that she and her husband had made a deed to one Parsons, duly acknowledged, conveying one acre, which in the deed to Huntington she had reserved, and that in the deed to said Parsons she recognized the Hunting-

ton deed in describing the one acre by the language, "and more particularly described in a deed of the party of the first part to C. P. Huntington."

The bill contended, that by reason of said deeds and the plaintiff's claim and possession of said land and the claim of Mrs. Pennybacker through said chancery suit and decree therein, recognizing said sale to Huntington and obtaining the benefit of its proceeds, and her recognition of the conveyance to Huntington in her deed to Parsons, and the knowledge on the part of Laidley of all the rights of all these parties, when he took his deed, the said land company had good title, which was beclouded and disquieted by Laidley's claim and action of ejectment.

It appeared, that Mrs. Pennybacker had later suffered losses and was insolvent, and her husband's estate likewise, and not good for the warranty in said deed.

The bill claimed, that Laidley held under his conveyance from Mrs. Pennybacker as trustee for the Land Company and others owning parcels of the land under it; and it prayed that he be required to convey said lands to them, and be enjoined from prosecuting said action of ejectment and other actions, which Laidley had instituted against vendees of said company; or, if such relief could not be had, that Laidley be required to refund the $11,000.00, which Huntington had paid Mrs. Pennybacker for the land, and that the land be charged with it.

Laidley filed an answer maintaining, that by the deed from Pennybacker and wife John M. Pennybacker passed only a life-estate to Huntington, as the deed from Everett to Mrs. Pennybacker invested him with a life-estate and her with a remainder in fee; and that Mrs. Pennybacker by the deed to Huntington did not convey her estate to him, and denying that she received the $11,000.00 consideration from Huntington, and averring that her husband received and squandered it. He denies, that he represented to her, that she had only a dower, and avers told her her deed to Huntington was void, and she could recover a fee-simple. He denies all right of the plaintiff, and contends that he (Laidley) is not to be deemed a trustee holding the title for the com-

pany, and in all respects relies on his title, and resists at length the entire claim of the plaintiff.

The plaintiff filed an amended and supplemental bill setting up the sales of other parcels of land to other parties, and stating that since the filing of the original bill said writ of error had been determined, reversing said judgment in ejectment, and granting a new trial, and alleging again substantially the facts stated in the original bill, claiming that the plaintiff had superior equity, while Laidley held the legal title, and praying the same relief as was prayed for in the original bill.

Laidley answered contesting the plaintiff's case from first to last, alleging that the deed to Huntington had been held void by the Supreme Court, asserting his title and insisting that the plaintiff's title was void.

Mrs. Pennybacker filed demurrers to both bills, assigning various grounds. Laidley also filed demurrers to both bills, specifying various grounds. Voluminous depositions were taken by both sides. On the hearing the bills were dismissed; and plaintiff took the appeal, which we now decide.

This is a very important cause involving the right to a large part of the growing city of Huntington. The deed from Pennybacker and wife to Huntington has been held by this court void as to the fee because of defects in the certificate of the examination and acknowledgment of Mrs. Pennybacker. We must in deciding this cause start on our road with that fact settled, and follow the logical, legal sequences, lead where they may. A line of decisons by this court holds, that a married woman's deed with such defective certificate is not merely voidable but utterly void *ab initio*. No power can now change this rule but that of the legislature. This paper, though it has the form and semblance of a deed, is no deed in law as to Mrs. Pennybacker and as to her passed no title whatever,—not a shadow of title either legal or equitable—to Huntington; and in the language of the Maryland court in *Johns* v. *Reardon*, 11 Md. 465, is to be dealt with, as though Mrs. Pennybacker were no party to it. Therefore title remained in her notwithstanding said deed, and she could and did pass it to Laidley by her subsequent deed to him.

Plaintiff admits, that Laidley has the legal title, but contends, that it has the equitable title, and that Laidley taking his deed with knowledge of its rights is in equity but a trustee holding title for the plaintiff's benefit and should be compelled to convey to it. But the trouble, which faces this position is, that Huntington's deed being void conferred no title on him, and his vendee has no shadow of title, which the law can see. To affect a second purchaser with a first purchaser's right, that first purchaser must have a right known to the law valid and enforceable, not one void, unknown to the law and outside of its recognition. How can the law notice what does not exist—a mere nonentity? Some right may exist *in foro conscietiæ* but the *forum legis* knows it not. The statute is intended to protect the woman, to enable her to retain her estate, unless she convey it in the mode by it prescribed; but what good would her estate do her, if she could not after such void deed sell it? Under this argument, she could not sell it, for whoso would buy it would be affected with a trust for the first vendee. This would defeat the statute. The statute would thus in one breath say to her: "You shall not convey, unless you convey in a certain mode," and in the next: "As you have conveyed, though not in the mode prescribed, you shall never hereafter sell to another." This would be a gross inconsistency.

In the case of a married woman's void conveyance, (*Mattox* v. *Hightshue*, 39 Ind. 95,) it was held, that "a right in equity can not grow out of an illegal and void transaction." *Mustard* v. *Wohlford*, 15 Gratt. 329, was a case, where an infant sold land by title-bond to Mustard and later, when of age, sold the same land by title-bond to Wohlford with notice of the sale to Mustard, and later conveyed it to Mustard pursuant to his sale to him; Mustard having notice of the sale to Wohlford. Wohlford sued Mustard and the vendor to cancel Mustard's deed and get title to himself and succeeded. The court held, that, if an infant convey land, he may convey to another when of age, and his deed will avoid the first conveyance; and that the disaffirmance of the first sale by the second sale, after the infant has become adult, rendered the first sale void and extinguishes any interest in law or equity, which the first purchaser may

have acquired under it, and entitles the vendor or second purchaser in his name to recover possession of the land at law and hold it free from any equity of the first purchaser.

That case logically by analogy rules this case. An infant's conveyance is not void but voidable, whereas a married woman's deed without proper certificate is void at the start. If a man may purchase the infant's land, after he becomes of age, with notice of a prior sale to another during infancy vesting the first purchaser with title until avoided, and the second purchaser takes a better title than the first and can call on equity to enforce his right by taking from the first purchaser his legal title acquired, after the infant obtained his majority, pursuant to his sale in infancy, why can not much more a second purchaser from a married woman acquire a better title than one, who took from her a deed not voidable but void at the instant of its execution? As Judge AGNEW said in *Glidden* v. *Strupler*, 52 Pa. St. 402, in speaking of a married woman's void deed: "Equity can not breathe life into a legal nonentity." 1 Story, Eq. Jur. § 177, says of married women's void acts: "Equity must follow the law, be the consideration ever so meritorious." Such void deed can not be void in a court of law and valid in a court of equity, for the statute binds both. "What immunity or protection would a woman have from her incapacity to alienate her property, if it could be removed by changing the form of action from law to equity?" asks Judge AGNEW in *Glidden* v. *Strupler*, cited above. And so the plaintiff's appeal to a court of equity from a court of law must be vain; for the iron rule of the statute in question binds both courts with its imperious power.

Another point is made by the able counsel of the plaintiff based on the idea of estoppel; the argument being, that, as she received the money under the sale to Huntington and used it, and some of it was paid for a farm in her husband's name, which she followed up by suit and secured and now enjoys, she cannot repudiate her conveyance to Huntington.

The statute was meant for her protection. Were she herself suing for her land, would any one question her right to recover? To forbid her would be a virtual repeal of the

statute by the court.    Had she sealed and delivered the deed and received the money, and there were no appearance of a certificate of acknowledgment, could she not recover it?    To forbid her would deny her the protection the common-law and statute afford her.    What is the difference between the two cases?    This estoppel is based solely on or arises solely from the void deed and is to bar a married woman.    Herm. Estop. § 1099, says: "When an agreement is void for infancy or coverture, an estoppel founded solely on it must be equally void.    The law throws its protection around infants and *femes covert*, and they can not be made liable to a contract by their own representations."    The Supreme Court of Indiana in *Mattox* v. *Hightshue*, 39 Ind. 95, concerning a married woman's void deed says: "A party can never be estopped by an act, that is illegal and void."    In *Glidden* v. *Strupler*, cited above, Judge AGNEW says:    "The next point is that of estoppel.    If through the administration of equity we can produce a result, which the law denies *ab initio* on grounds of public policy, then estoppel or compensation, its equitable equivalent, does what the law and policy have forbidden. But we have seen, that in such a case equity does not overturn but follows the law."    If Mrs. Pennybacker would not herself be estopped, neither would Laidley.    In purchasing he did no wrong in the eye of the law.    He but purchased from her an estate, which it was lawful for her to convey, and stands in her shoes invested with all her rights.    *Rogers* v. *Higgins;* 48 Ill. 211:

Again, it is said, that in the suit of Pennybacker against her husband and others, wherein she referred to the deed to Huntington and claimed the money as her separate estate and sought its proceeds, and by her reference in her deed to Parsons to the deed to Huntington she recognizes that deed and ratifies it.    So it was contended in *Leftwich* v. *Neal*, 7 W. Va. 569, that letters of the married woman and other evidence tending to show, that she admitted the validity of the deed, should be considered.    Judge PAULL said:    "We think the testimony wholly inadmissible for the purpose." He cited *Elliott* v. *Peirsol*, 1 Pet. 328, quoting from that case the following language:    "What the law requires to be done and appear of record can only be done and made to appear

by the record itself." He quoted from *Barnett* v. *Shackleford*, 6 J. J. Marsh, 532: "Parol evidence is not sufficient. It can only be proved by the record. If parol evidence should be admitted to establish it, then an acknowledgment by a *feme covert* before witnesses *in pais* would be as good as an acknowledgment before the officer designated by law and making up a record thereof in the manner prescribed, and thus the guarded provisions of our statutes might be substituted by a new branch of equity jurisdiction." In *Glidden* v. *Strupler*, *supra*, it is held: "The contract of a married woman being void, it cannot be ratified unless by deed in the mode described by the statute."

The claim of plaintiff to compel Laidley by a charge on the land to repay the $11,000.00 purchase-money paid by Huntington can not be sustained. Laidley was not a party to the deed from the Pennybackers to Huntington, and the claim is purely a personal demand and only against the husband of Mrs. Pennybacker; and as Huntington's deed was void, and he thereby acquired no interest in or concerning the land, his payment does not attach to the land or follow it into Laidley's hands. *Mustard* v. *Wohlford*, 15 Gratt. 329. Even if the deed were valid, the covenant of warranty would not avail against Mrs. Pennybacker, as by Code 1887, c. 73, s. 6 such covenant binds the woman no further than to pass her land. It could not charge the land, for that would measurably defeat the object of the law, declaring her deed not conforming to the statute void, and yet incumbering it with the purchase-money. She could not by deed of trust charge it without privy examination, yet under this theory she can indirectly incumber it to its full value by charging it with the purchase-money received under a void sale. Out of an act utterly void equity is to give birth to a lien, which will sweep away her land and thus indirectly do just what the act meant should not be done.

In *Scott* v. *Battle*, 85 N. C. 185, it was held, that the married woman's conveyance was a nullity, and the vendee had no lien on the land for purchase-money and no right of action against the woman personally. The court after showing why the deed was void by reason of the acknowledgment not conforming to the act added: "It would seem, that the

same reasoning must be a full answer to the defendant's demand for the restoration of the purchase-money.    *    *    *
In no case will the law imply a promise on her part, and any one, who deals with her, is held to do so with a knowledge of her disability."

As to the claim of adversary possession under the statute of limitations, this Court held, that the deed from Pennybacker and wife to Huntington having been made prior to the enactment of the Code of 1868, containing section 3 of chapter 66, did not confer on Mrs. Pennybacker a separate estate, but conferred on her husband a freehold estate, which would continue during the joint lives of husband and wife, with remainder to her.    Huntington by the deed to him became vested with the freehold life-estate of the husband of Mrs. Pennybacker, and he and his vendees had right to possession, as long as her husband lived, and she or Laidley had no right to that possession until his death; which occurred May 5, 1881.    Thus her right of action did not accrue until then, and the ejectment was brought 28th March, 1882.    The action is not barred.    *Bolling* v. *Teel*, 76 Va. 487; Wood, Lim. 527, 528; 1 Rob. Pr. 508–510; Tyler, Ej. 923, 946; 3 Washb. Real Prop. 132, 133; *Ball* v. *Johnson*, 8 Gratt. 285; *Merrit* v. *Smith*, 6 Leigh, 493.

The case of *Shivers* v. *Simmons*, 54 Miss. 520, is greatly relied on by the appellant.    The syllabus is: "A married woman, who on exchanging lands received a perfect deed but gave one, the certificate of acknowledgment, to which was fatally defective, is estopped, when nine years thereafter the defect is discovered, to assert her title, if she has sold the lands received and with the proceeds purchased others." This was a case of exchange, it may be noted.    The judge delivering the opinion says: "We do not say, that a mere reception of the purchase-money would estop her, where she has attempted to convey by an invalid deed, though it seems difficult to see how the purchaser's title is void in the one case and not in the other.    It is true, on the other hand, that a man, who has made a conveyance wholly inoperative under the statute of frauds, will not always be estopped by a reception of the purchase-money, and that the remedy of the vendee ordinarily is by an action for its recovery.    But that

is not the case before us. Mrs. Shivers bargained for an exchange of lands with the appellee." So according to that court that case is not exactly in point here.

. The case of *Warner* v. *Sickles*, Wright, 81, is also urged by the appellant, wherein there was a sale of land by a married woman, who afterwards conveyed it to a third person with notice of the first sale, and the second purchaser was held to hold for the first purchaser and was decreed to convey to him. The court thought the title-bond of the *feme* void, and that it could not be enforced against her or her heirs, yet said she had no interest to protect but had conveyed to a third person, and for that reason held that third person a trustee: How the instrument could be utterly void as to the *feme* and her heirs and not enforceable against them, and yet valid against one who purchased from her by proper deed and became vested with her estate, I cannot see. . The conclusion seems illogical.

We do not think these cases propound the law correctly, and we can not follow them.

As to the charge that Laidley obtained his deed by misrepresentation and fraud and for inadquate price we express no opinion for the Central Land Company having no interest in the estate by reason of the void deed can not avail itself of such misrepresentation, fraud and inadequacy, if that allegation were ever so well sustained.

The decree of the Circuit Court of Summers county is affirmed with costs to appellee.

Affirmed.