CASE 69—ACTION BY THE MAYSVILLE BRICK COMPANY AGAINST THE CHESAPEAKE AND OHIO RAILWAY COMPANY.—March 10, 1909.

# Ches. & Ohio Ry. Co. v. Maysville Brick Co.

Appeal from Mason Circuit Court.

JAMES P. HARBESON, Circuit Judge.

Judgment for plaintiff. Defendant appeals—Reversed.

1. Commerce—Power to Regulate—Interstate Commerce.—The interstate commerce act has no application to a contract for the transportation of goods between two points in the same state.

2. Carriers — Regulation — Preferences and Discriminations. — Const. sec. 214, provides that no railway shall make any preferential contract for the transportation of freight. Ky. St. section 817 (Russell's St. sec. 5354), makes it an offense for any railroad company to charge a greater or less compensation for any service rendered to one person in the transportation of passengers or property than it charges any other person for doing a like service. Held, that a contract with a railroad company for the transportation of freight between two points in this State at a rate less than the regular rate of such company is contrary to public policy and void, although the shipper was ignorant of the fact that it was receiving a preferential rate.

3. Contracts—Effect of Illegality—Relief of Parties.—No right of action can be predicated on a contract that is contrary to public policy.

4. Contracts—Action for Breach—Defenses.—Mere notice by a party to a contract to the other party that the party giving the notice intends to violate the contract is no defense to an action for damages for the breach.

Chesapeake & O. Ry. Co. v. Maysville Brick Co.

WORTHINGTON, COCHRAN AND BROWNING for appellant.

POINTS AND AUTHORITIES.

1. The contract set up in appellee's petition and upon which this suit is based, is illegal and opposed to public policy both at common law and by virtue of the provisions of section 214 of Kentucky Constitution, and 817 of Kentucky Statutes. (Sec. 214, Constitution; Sec. 817, Kentucky Statutes; Beales and Wyman on Railroad Rate Regulation, sec. 724, Chapter XXI; Messenger v. Pennsylvania R. Co. (N. J.), 13 Am. Rep. 547; Schofield v. L. S. & M. S. Ry. Co., 43 Ohio St. 571; 3 N. E. 907, 54 Am. Rep. 846; Fitzgerald v. Grand Trunk Ry. Co., (Vt.) 22 Atl. 76; 13 L. R. A. 70; Handy v. Cleveland, &c. Ry. Co., 31 Fed. 689; Burlington, &c. Ry. Co. v. Feed Co., 31 Fed. 652; Samuels v. L. & N. R. Co., 31 Fed. 57; Hays v. Pennsylvania Co., 12 Fed. 311; Western Union Tel. Co. v. Publishing Co., 181 U. S. 92; Murphy v. Simpson, 14 B. Mon. 419; Van Meter v. Spurrier, 94 Ky. 22, 21 S. W. 337; Savannah, &c. Ry. Co. v. Bundick, (Ga.) 21 S. E. 995; Texas Pacific Ry. Co. v. Mugg, 202 U. S. 242; Gulf, &c. Ry. Co. v. Hefley, 158 U. S. 98; Indianapolis, &c. Ry. Co. v. Erwin (Ill.), 8 N. E. 862; Church v. Ry. Co. (S. Dak.), 85 N. W. 1001.)

2. Appellee was certainly not entitled to rely upon the four cent rate, after that mistake was discovered and it was informed thereof.

THOMAS D. SLATTERY for appellee.

POINTS AND AUTHORITIES.

1. Under the common law the shipper could enforce his rate contract, although the rate was less than that charged others. (Cleveland C. C. & I. R. Co. v. Closser, 9 L. R. A. 754; Arvinger v. South Carolina R. Co., 29 S. C. 265; Missouri Pac. R. Co. v. Texas and P. R. Co., 30 Fed. Rep. 2; Dow v. Beidelman, 125 U. S. 680, 31 L-ed, 841; Chicago M. & St. Paul R. R. Co. v. Minnesota, 134 U. S. 418, 33 L-ed, 970; Ragan v. Aiken, 9 Lea 609; Ex parte Benson, 18 S. C. 39; Johnson v. Pensacola & P. R. Co., 16 Fla. 623; Christie v. Missouri Pac. R. Co., 13 West Rep. 688, 94 Mo. 453; Bayless v. Kansas Pac. R. Co., 5 L. R. A. 480; Fitchburg R. Co. v. Gage, 12 Gray 393; Chicago B. & O. R. Co. v. Parks, 18 Ill. 460; Hay v. Penn Co., 12 Fed. Rep. 310;

Chesapeake & O. Ry. Co. v. Maysville Brick Co.

Interstate Com. Com. v. B & O. R. Co., 8 R. R. & Corp. L. J. 343, 3 Int. Com. Rep. 192; Hersxh v. Northern Cent. R. Co., 74 Pa. 181; Com. v. Power, 7 Met. 596, 41 Am. Dec. 486; Louisville E. & St. L. Consolidated R. Co. v. Wilson, 18 L. R. A. 105; State v. Cin. W. & B. Ry. Co., 47 Ohio St. 130; Lake Shore and M. S. Ry. Co. v. Scofield, 2 Ohio Cin. Ct. R. 305.)

(a) The case of Messenger v. Pennsylvania Railroad Company, 13 Am. Rep. 547 explained. (Cleveland C. C. & I. R. Co. v. Closser, supra; Stewart v. Lehigh Valley R. Co., 38 N. J. L. 505.)

(b) The case of Burlington C. R. & N. R. Co. v. Northwestern Fuel Co., 31 Fed. 652, condemned and declared unsound. (Cleveland C. C. & I. R. Co. v. Closser, supra.)

2. Exhibits filed by appellant should control, rather than the pleading. (Kentucky Mutual Co. v. Logan, 90 Ky. 364; Boyd v. Bethel, 10 Ky. Law Rep. 470; L. C. & L. R. Co. v. Mahan, 8 Bush 184.) · -

3. The contract in question not a discrimination. (L. & N. Ry. Co. vs. Vancleave, 23 Ky. Law Rep. 479; I. C. R. R. Co. v Com., 23 Ky. Law Rep. 544; L. & N. R. R. Co. v. Walker, 23 Ky. Law Rep. 453; L. & N. v. Com., 104 Ky. 258; Atchison T. & S. F. R. Co. v. Goetz & Boulden Mfg. Co., 51 Ill. App. 151; Chicago N. W. Ry. Co. v. Osborne, 52 Fed. 912; Lozier v. U. S., 52 Fed. 917; U. S. v. Mullen, 53 Fed. 912; Parsons v. Chicago & N. W. Ry. Co., 63 Fed. 903; Int. Com. Com. v. Cin., N. O. & T. P. Ry. Co., 56 Fed. 925.)

4. Even though the contract in question is a discrimination, appellee, being the innocent party can recover (Memphis & Co. Packet Co. v. Abell, 17 Ky. Law Rep. 191; C. &. O. Ry. Co. v. Dobbins, 23 Ky. Law Rep. 1588; Ohio & M. Ry. Co. v. Savage, 38 Ill. App. 148; Mount Pleasant Mfg. Co. v. Cape Fear & Y. V. R. Co., 106 N. C. 207; Vol. 9, sec. 901, Century Digest; Colburn v. Phillips, 79 Mass. (13 Gray) 64; Com. v. L. & N., 21 Ky. Law Rep. 469; Mobile and Ohio Ry. Co. v. Dismukes, 17 L. R. A. 113.)

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Reversing.

Plaintiff, Maysville Brick Company, and defendant, Chesapeake & Ohio Railway Company, through its agent at Maysville, Ky., entered into a contract for the shipment of a number of car loads of bricks

from Maysville to Frankfort, Ky., at the rate of 4 cents per 100 pounds. Plaintiff thereupon shipped 48 car loads of bricks to consignees at Frankfort. According to the arrangement between the plaintiff and the parties to whom the bricks were shipped, the latter were to pay the freight charges and deduct the same from the amount of plaintiff's bill. Upon the delivery of the cars at Frankfort, a rate of 7 cents per 100 pounds, instead of 4 cents, was collected from plaintiff's consignees. Thereafter plaintiff instituted this action to recover the difference between the 4-cent rate and the 7-cent rate on the shipment in question. The defendants first filed an answer to which a demurrer was sustained. Subsequently it filed an amended answer containing three paragraphs. A demurrer was sustained to each of these paragraphs, and, defendant declining to plead further, judgment was rendered in favor of plaintiff for $938.50. From that judgment this appeal is prosecuted.

The only question involved is the propriety of the court's action in sustaining a demurrer to each paragraph of the amended answer. The first paragraph contained a plea to the effect that the contract by which a 4-cent rate was agreed upon between plaintiff and defendant was contrary to the provisions of the interstate commerce act, and illegal, null, and void. As the shipment in question was from a point within the state of Kentucky to another point in the same state, it is manifest that the interstate commerce act does not apply. The demurrer to the first paragraph of defendant's answer was therefore properly sustained.

The real question in this case is whether or not the

second paragraph of the amended answer presents
a defense. That paragraph is as follows: "Defend-
ant, further answering and reiterating all the allega-
tions and denials contained in the first paragraph, and
making them a part hereof as if fully incorporated
herein, states that on the ........ day of June, 1907,
and at all the times mentioned in plaintiff's petition,
the regular prescribed rate of car load shipments of
brick from Maysville, Ky., to Frankfort, Ky., over its
line of railway, was 7 cents per 100 pounds. It states
that said rate of 7 cents is the regular tariff rate duly
published and on file in the defendant's office in the
city of Maysville, Ky., and open to plaintiff's inspec-
tion; that said rate was the rate exacted and collected
by defendant of other persons during the times men-
tioned in plaintiff's petition for a like and contempo-
raneous service and transportation of a like kind of
traffic. It states that the said 7 cents was the rate
collected by the defendant from plaintiff's consignees
at Fankfort, Ky. It states that the contract set out
in plaintiff's petition and herein relied upon was
entered into by defendant's agent, W. W. Wykoff,
under a mistake as to what was the correct rate be-
tween Maysville, Ky., and Frankfort, Ky., upon
defendant's line of railway; that the quoting of said
rate of 4 cents was unauthorized by defendant; and
that same was illegal, null, and void. It states that
under and by virtue of section 214 of the Constitu-
tion of Kentucky, and section 817 of the Kentucky
Statutes, this defendant, its agents, and servants are
prohibited from charging, demanding, collecting, or
receiving from any person a less rate than it charges,
collects, demands, or receives from any other per-
son for performing a like and contemporaneous serv-

ice in the carriage of a like kind of traffic. It states that, during all the times mentioned in plaintiff's petition, the defendant, its agents and servants, charged, collected, demanded, and received of all other persons a rate of 7 cents per 100 pounds for transportation of a like kind of traffic for the same distance. The defendant states that the contract set out in plaintiff's petition and the rate of 4 cents therein referred to are each of them illegal, null and void under and by virtue of the foregoing provisions of the Kentucky Constitution and the Statutes of Kentucky, and the plaintiff is not entitled to rely thereon or to recover damages for a breach thereof. Wherefore defendant pleads and relies upon the above facts in bar of plaintiff's right to rely upon said alleged contract, or to prosecute this action for a breach thereof, or to set up or claim any damages therefor.'' Section 214 of the Constitution of Kentucky, referred to in the above paragraph of defendant's answer, is as follows: ''No railway, transfer, belt line or railway bridge company shall make any exclusive or preferential contract of arrangement with any individual, association or corporation, for the receipt transfer, delivery, transportation, handling, care or custody of any freight, or for the conduct of any business as a common carrier.'' Section 817, Ky. St. (Russell's St. section 5354), is as follows: ''If any corporation engaged in operating a railroad in this state shall, directly or indirectly, by any special rate, rebate, drawback or other device, charge, demand, collect or receive from any person a greater or less compensation for any service rendered in the transportation of passengers or property than it charges, demands, collects, or receives from any

other person for doing for him a like and contemporaneous service in the transportation of a like kind of traffic, it shall be deemed guilty of unjust discrimination.''

In this connection it is well to consider the decisions of the courts construing the interstate commerce act. By section 6 of that act a carrier is prohibited from deviating from its published tariff rate.  A similar prohibition is contained in section 2 of the act, the latter section being identical in the language with section 817, Ky. St.   Under the provisions of this act, it is held that when a carrier contracts for a less rate than its regular tariff rate, and subsequently charges its regular rate, the shipper has no cause of action for breach of contract.  This question is fully discussed in the case of Savannah, etc., Ry. Co. v. Bundick, 94 Ga. 775, 21 S. E. 995, wherein the court said: ''This was an interstate shipment, and therefore must be governed by the provisions of the interstate commerce act.  That act prohibits not only contracting for, but also collecting, a less rate of freight on such shipments than that specified in the schedule of rates in force at the time, and the act requires that such  schedule  shall  be  printed,  and  kept in every station for inspection and use by the public.  It appeared unmistakably in this case that the railway company had fully complied with the law in reference to providing and keeping the schedule.   One of the main purposes of the act in question is to prevent carriers subject to its provisions from making discriminations either for or against any of its customers, and to compel such carriers to observe uniformity and equality in their dealings with all shippers   Therefore it was lawful for the company to

make in Bundick's favor a rate of freight less than that which, under the schedule, it was required to charge every customer. It makes no difference whether Bundick was or was not ignorant that the rate named to him was an unlawful one. Under no circumstances would he be entitled to the benefit of a rate which was denied to other customers. To so hold would be in the very teeth of the statute, and would utterly defeat its purpose to prevent such discrimination. Such advantage as he could gain under the terms of the statute, and no more, would be the precise measure of Bundick's rights under any contract of shipment he might make with the carrier. Besides, he might easily have informed himself upon this point by merely inspecting the schedule which the law required to be kept, and to which, as the evidence discloses, he had ready access. If the company's agent at the shipping point had willfully deceived him, and thus have fraudulently induced him to make a shipment which he would otherwise not have made, and to his damage, we are not prepared to say he would not have a cause of action of some kind against the company to redress the tort; but we are quite certain, under the facts of this case, he had no right to rely on and enforce the illegal contract, which, at best, resulted alone from innocent mistake. Nor has he any right to an action of any kind against the company to maintain which he must necessarily invoke the illegal contract in question. 'The general rule of law is that a contract made in violation of a statute is void, and that, when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover.' Hancock v.

Railroad Co., 145 U. S. 416, 12 Sup. Ct. 969, 36 L. Ed. 755, and authorities there cited.''

But it is insisted that plaintiff should be permitted to recover because it was ignorant of the fact that it was receiving a perferential rate. In support of this position, we are cited to the case of Mobile & Ohio Ry. Co. v. Dismukes, 94 Ala. 131, 10 South. 289, 17 L. R. A. 113, wherein the doctrine is laid down as contended for by plaintiff. In the subsequent case, however, of Southern Ry. Co. v. Harrison, 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936, the Supreme Court of Alabama, in view of the interpretation placed upon the interstate commerce act by the Supreme Court of the United States, followed the doctrine laid down by the latter court, and announced the fact that the rule ennunciated in the Dismukes Case could no longer be followed. The Alabama court said: "In Gulf, etc., Railroad Co. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910, the plaintiff sued to recover damages for the refusal by the carrier to deliver goods consigned to him, after tender of payment of the stipulated charges named in the bill of lading. The goods, a lot of furniture, had been received by the carrier at St. Louis, Mo., for transportation to Cameron, Tex., at a stipulated rate, specified in the bill of lading, of 69 cents per 100 pounds, the charge amounting to $82.80, whereas the published schedule rate in force at the time was 84 cents, and the charges should have been $100.80, and the plaintiff in this case, was ignorant of the fact that the rate obtained was less than the schedule rate. It was held in an opinion by Brewer, J., that the plaintiff was not entitled to recover. It is true that the only question discussed in the opinion was

whether or not the interstate act superseded the Texas statute, which prohibited a common carrier from charging or collecting from the owner or consignee of freight a greater sum than that specified in the bill of lading, and this question was decided in the affirmative. * * * But this was not the only effect of the decision, and it is by its effect on the rights of the parties to such a contract, by whatever process of reasoning the decision may be reached that the state courts are bound. The clear effect of the decision was to declare that one who has obtained from a common carrier transportation of goods from one state to another at a rate specified in the bill of lading, less than the published schedule rates filed with and approved by the Interstate Commerce Commission, and in force at the time, whether or not he knew that the rate obtained was less than the schedule rate, is not entitled to recover the goods, or damages for their detention, upon the tender of payment of the amount of charges named in the bill of lading, or of any sum less than the schedule charges. In other words that, whatever may be the rate agreed upon, the carrier's lien on the goods is, by force of the act of Congress, for the amount fixed by the published schedule of rates and charges, and this lien cannot be discharged, and the consignee can become entitled to the goods, only by the payment, or tender of payment, of such amount. Such is now the supreme law, and by it this and the courts of all other states are bound, and for this reason our ruling in the Dismukes Case can no longer be followed." Subsequently the Supreme Court of the United States, in the case of Texas & Pacific Ry. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011, held that one obtaining from a

common carrier transportation of goods from one state to another at a rate specified in the bill of lading less than the schedule rates published and approved and in force at the time, whether he does or does not know the rate is less than schedule rate, is not entitled to recover the goods, or damages for their detention, upon tendering payment of the amount specified in the bill of lading, or of any sum less than the published charges. The court further cited with approval the above language of Chief Justice Brickell in Southern Ry. Co. v. Harrison, supra, and announced that it aptly reviewed and declared the effect of the decision in Railroad Co. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910. In the case of Scofield v. Railway Co., 43 Ohio St. 571, 3 N. E. 907, 54 Am. Rep. 846, the court held that a contract unlawfully discriminating in favor of a large shipper to the prejudice of other shippers of like freights under the same circumstances, is contrary to public policy, and therefore void. And in the case of Indianapolis, D. & S. R. Co. v. Ervin and Others, 118 Ill. 250, 8 N. E. 862, 59 Am. Rep. 369, it was held that a contract by a railway company with a shipper, by which he is to ship his grain at the regular rates paid by all shippers, and then receive a special rebate, extended to no other shipper, or to but one other shipper, is contrary to sections 2 and 3 of the Illinois act of 1873 (Laws 1873, p. 135) against extortion and unjust discrimination (2 Starr & C. Ann. St. 1896, c. 114, pars. 167, 168), and is void.

By section 214 of the Constitution, a preferential contract for the transportation of freight is prohibited. By section 817 of the Kentucky Statutes, the transportation company giving such a prefer-

ential rate is declared to be guilty of unjust discrimination. By the above provision of the Constitution and of the statutes of Kentucky, the public policy of this state with reference to unjust discrimination in rates has been declared. Plaintiff admits by demurrer that by the contract which it made with defendant's agent it obtains a rate lower than that which was charged other shippers for a like or contemporaneous service in the transportation of a like kind of traffic. It necessarily follows that the contract in question is contrary to the public policy of the state as declared in its Constitution and statutes, and is therefore illegal and void. That being the case, it matters not whether the plaintiff knew or did not know that it was obtaining a preferential rate. This is not a case where it is sought to punish the shipper for obtaining a preferential rate contrary to the statutes. In such a case, in order to show guilt, it may be necessary to show knowledge. It is simply a case where the shipper seeks to obtain damages for violation of a contract that is illegal and unenforceable. No right of action can be predicated on a contract that is contrary to public policy and void. Neustadt v. Hall, 58 Ill. 172; Jerome v. Bigelow, 66 Ill. 452, 16 Am. Rep. 597; Craft v. McConoughy, 79 Ill. 346, 22 Am. Rep. 171; Murphy v. Simpson, 14 B. Mon. 419; Vanmeter v. Spurrier, etc., 94 Ky. 22, 21 S. W. 337. While it may be true that this interpretation of the statute may work a hardship in this particular instance, it is also true that it is the only interpretation that will make the Constitution and the statutes effective. To hold otherwise would be to open the door to fraud and evasion. If the shipper, in ignorance of the rate charged other

shippers for a like service, could obtain a preferential
rate, and then sue and recover the difference between
that rate and the regular rate charged other shippers
for a like service, there would be nothing to prevent
the railroad from establishing a system of rebates by
which the law could be utterly defeated. Manifestly
the transportation company would be authorized to
refund to the shipper that which the latter could sue
for and recover. There can be no doubt of the wisdom
of the provisions of our Constitution and statutes.
Under the old system, where preferential rates were
allowed, the success of business men depended, not
upon industry, capacity, and attention to business,
but upon whether or not they were among the favored
class. To do away with this injustice and inequality
the provisions of our Constitution and statutes were
enacted. If adhered to and enforced they are a
great protection to the citizens of our state. If in-
terpreted so that they may be evaded and the purpose
of their enactment utterly defeated, it were needless,
indeed, to have enacted them.

But it is insisted by counsel for appellee that the
regular rate of 7 cents is composed of two local rates
—one of 4 cents, from Maysville to Lexington, and
one of 3 cents, from Lexington to Frankfort—and
that the law permits the charging of a lower rate
for through business. Even if that be true, however,
it does not permit the giving to one shipper of a lower
through rate than is charged other shippers for like
service. It matters not how the rate may be arrived
at. It must be the same for all persons obtaining a
like and contemporaneous service in the transporta-
tion of a like kind of traffic. The answer expressly
states that 7 cents was the regular rate charged all

other persons for a like service. It matters not, then, whether the rate in question was a through rate, or was composed of two local rates. The contract with plaintiff was an unjust discrimination.

The third paragraph of defendant's amended answer presents the defense that, before plaintiff shipped the last three car loads of bricks, defendant notified it of the mistake and informed it that the 7-cent rate would apply; that, notwithstanding such knowledge, said three car loads were shipped by plaintiff, and were billed out at the 7-cent rate. Manifestly, if the contract for a 4-cent rate was valid, this paragraph would furnish no defense. Mere notice by a party to a contract, to the other party that he intends to violate the contract is certainly no defense to an action for damages on the contract which has been violated. Inasmuch, however, as the contract in question was invalid, it will not be necessary to further discuss this paragraph.

Being of the opinion that the contract sued on is contrary to public policy and void, it therefore follows that the trial court erred in sustaining the demurrer to the second paragraph of defendant's amended answer.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.