# Tobacco By-Products & Chemical Corporation v. Western Dark Fired Tobacco Growers Ass'n.

Nov. 14, 1939.

Webb & Webb for appellant.

Ben T. Cooper for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

The Tobacco By-Products & Chemical Corporation is appealing from a judgment dismissing its petition and denying it recovery in an action whereby it sought to recover of the Western Dark Fired Tobacco Growers Association $550.39 for a freight differential which it had been required to pay and for which it alleged it was

entitled to be reimbursed under the provisions of its contract with the association.

In June, 1937, appellant and appellee entered into a written contract whereby the former purchased from the latter 1,500,000 pounds of flood damaged tobacco stored at various points in Western Kentucky and Tennessee and which were to be shipped by appellee to appellant's plant in Louisville. Among other things the contract provides,

> "The seller agrees to load all cars to not less than 40,000 pounds each and in the event of any car load shipment carrying less than 40,000 pounds, seller agrees to compensate buyer for such freight differential."

As appears from the record shipments of car load lots of 40,000 pounds or more would be made for a less freight rate than car load lots of smaller quantity. There is a stipulation in the record as to the published rates between the various points at which the tobacco was stored and the city of Louisville, and which were on file with the Interstate Commerce Commission and the Kentucky Railroad Commission at the time of the shipments involved; that the differential in freight rates paid by appellant because the tobacco was not shipped in quantities that would take the lower rate amounted to $550.39.

In its petition appellant set up the terms of the contract and the freight differential it had been required to pay because of shipment of car loads of less than 40,000 pounds. In addition to a traverse by appellee, the second paragraph of its answer consisted of a plea of estoppel, the basis of the plea being in effect that appellee had an agreement or understanding with the railroad that shipments of 40,000 pounds would take the regular rate for shipments of that quantity or over even though the 40,000 pounds or more were placed in different cars; that when 40,000 pounds were shipped in two different cars a bill of lading would be made out for one shipment with this notation thereon, "50,000 pound cars ordered, two smaller cars furnished for carrier's convenience." That these bills of lading were made out in duplicate, one sent to appellant and the other retained by appellee; that appellant knew of this agreement and understanding; that the first shipment was made on August 3 or 4, 1937, and thereafter there were shipments

at various times up to about the middle of September. During that time appellant paid freight bills at intervals which showed a freight rate higher than would have been charged for shipment in cars containing 40,000 pounds or more but did not notify appellee that this higher rate was being paid or had been paid until sometime in October.

The only question presented for decision is whether the lower court properly applied the doctrine of estoppel in denying appellant the relief sought. For the purpose of determining that question and without going into the evidence it may be assumed that appellant had full knowledge of all matters set up in the second paragraph of appellee's answer.

Section 214 of our Constitution forbids preferential contracts or arrangements by railroads with shippers for the transportation of freight or for the conduct of any business as a common carrier; and by Section 817, Kentucky Statutes, a common carrier giving a preferential rate is declared to be guilty of unjust discrimination.

In the case of Chesapeake & O. Railway Company, v. Maysville Brick Company, 132 Ky. 643, 116 S. W. 1183, an agent of the railroad company entered into a contract with the brick company for the shipment of a number of car loads of brick from Maysville to Frankfort at the rate of four cents per hundred pounds under which 48 car loads were shipped to the consignees at Frankfort. Under agreement between the brick company and the consignees the latter were to pay freight charges and deduct the amount thereof from the brick company's bill. Upon delivery by the carrier a rate of seven cents per hundred instead of four cents was collected from the consignees. The brick company in its action set up the foregoing facts and sought to recover the difference between the four cent rate provided in the agreement and the seven cent rate charged the consignees. Among other defenses the railroad company in a second paragraph of its answer alleged in substance that the seven cent rate charged was the regular rate for such shipments as shown by its tariff rate published and on file in its office in Maysville and open to public inspection and that such rate was the rate exacted by it of other persons during the time referred to in the petition for like and contemporaneous service and transportation of a like kind of traffic. It set up and relied on

Section 214 of our Constitution and Section 817 of the statutes as prohibiting it from charging, collecting or receiving from any person a less rate than it charged, collected or received from any other person for a like service for transportation of freight. A demurrer to the petition was sustained and the railroad company declining to further plead, judgment was rendered against it for the amount sought to be recovered.

In reversing the judgment of the lower court this court held that the trial court erred in sustaining the demurrer to the second paragraph of the answer because the contract sued on was contrary to public policy and void.

The opinion after setting out in full the sections of the Constitution and the statute supra, said [132 Ky. 643, 116 S. W. 1185]:

"By the above provisions of the Constitution and of the statutes of Kentucky, the public policy of this state with reference to unjust discrimination in rates has been declared. Plaintiff admits by the demurrer that by the contract which it made with defendant's agent it obtains a rate lower than that which was charged other shippers for a like or contemporaneous service in the transportation of a like kind of traffic. It necessarily follows that the contract in question is contrary to the public policy of the state as declared in its Constitution and statutes, and is therefore illegal and void. That being the case, it matters not whether the plaintiff knew or did not know that it was obtaining a preferential rate. * * * No right of action can be predicated on a contract that is contrary to public policy and void."

In the case of Louisville & Nashville Railroad Company v. Allen, 152 Ky. 145, 153 S. W. 198, 200, rates in interstate shipments were involved. The Louisville & Nashville was seeking to recover of Allen $732 alleged to be due it on account of undercharge made by it to him in the shipment of freight. Allen denied that an undercharge was made but by way of estoppel pleaded in effect that if there was in fact an undercharge the Louisville & Nashville knew all along that this undercharge was being made and suffered and permitted it to continue and therefore should not be heard to complain, or enabled to recover at his expense. The railroad com-

pany had made and filed with the Interstate Commerce Commission a schedule of rates as required by the Interstate Commerce Act (Section 6, 49 U. S. C. A., Section 6). The court held in effect that regardless of whether a copy of the tariff rates which had been filed with the Interstate Commerce Commission had been posted in depots of the Louisville & Nashville as required by the Interstate Commerce Act, rates fixed in the tariff or schedule so filed would prevail and could not be avoided by special contract between the carrier and the shipper for a less rate.

Among other things it was said:

"The law imposes upon the shipper a penalty for shipping goods at a rate less than the schedule tariff of rates; and hence, inasmuch as the law requires the railroad company to charge a fixed rate and the shipper to pay the same fixed rate, it is immaterial that a mistake was made, and the shipper cannot shelter himself behind the allegations that it was a special contract arrangement, by which the shipment was made, any more than the railroad company could avoid returning to him his money upon demand, if it should have been discovered that the railroad company had, in fact, charged him more, instead of less, than the schedule rate."

Many cases, foreign and domestic, of the same tenor might be cited but the foregoing serve to demonstrate conclusively that a contract between a shipper and a carrier of a preferential or discriminatory character is in contravention of the fixed public policy of this state and is void as declared by the constitutional and statutory provisions referred to and may not be used as a defense by way of estoppel or otherwise against the carrier; that being an absolute nullity it will not serve as a basis for either an action or a defense nor operate effectually for any purpose.

No doubt appellee and the agent for the carrier acted in the utmost good faith in entering into the alleged agreement but they were mistaken and as will be seen in Louisville & Nashville Railroad Company v. Allen, supra, it is immaterial that the mistake was made, and appellee cannot shelter himself behind the illegal contract nor can courts clothe with legality a contract that is absolutely illegal and void even by the application of the doctrine of equitable estoppel. If through

the application of that doctrine courts can bring about a result expressly forbidden by constitution and statute on the ground of public policy, then estoppel does what public policy and the law has forbidden. Glidden v: Strupler, 52 Pa. 400, 402. Notwithstanding any mistaken idea of appellee growing out of its alleged special agreement with the railroad agent, it was charged with knowledge of the law and the prevailing freight rates on file with the Interstate Commerce Commission and with the Kentucky Railroad Commission. Since, as shown by authorities cited, appellant would not in the circumstances be estopped to plead and rely upon the invalidity of the alleged agreement or contract between appellee and the railroad if it had actually been a party thereto it is self-evident that not being a party, it would not be so estopped merely because it had knowledge thereof.

"One cannot ordinarily be estopped to assert the direct violation of a decisive prohibition of statute or the unenforceability of a contract contrary to law." Commissioner of Banks v. Cosmopolitan Trust Company, 253 Mass. 205, 148 N. E. 609, 614, 41 A. L. R. 658; 19 Am. Jur. P. 638; See, also, Central Land Company v. Laidley, 32 W. Va. 134, 9 S. E. 61, 3 L. R. A. 826, 25 Am. St. Rep. 797.

It is our conclusion that appellant was entitled to recover under the quoted provisions of the contract the amount of differential paid by it as shown by stipulation of the parties.

Wherefore, the judgment is reversed for proceedings in conformity with this opinion.